## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

| | |
|---|---|
| RAHUL MALHOTRA, ) | |
| ) | |
| Plaintiff, ) | **Case No: 21-CV-2220** |
| ) | |
| v. ) | |
| ) | **Hon. James E. Shadid** |
| ) | **Magistrate Jonathan E. Hawley** |
| UNIVERSITY OF ILLINOIS ) | |
| URBANA-CHAMPAIGN, through the ) | |
| Board of Trustees (in their official capacity); ) | |
| RONY DIE (in his official and individual ) | |
| Capacity); and DOES 1-30 (in their official ) | |
| and individual capacity), ) | |
| ) | |
| Defendants. ) | |

### DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO RULES 12(b)(1) AND 12(b)(6)[1]

Defendants Board of Trustees of the University of Illinois ("Board"), and Rony Die (together, "Defendants"), by and through their counsel, submit this Memorandum in Support of their Motion to Dismiss Plaintiff's Complaint. As explained below, Plaintiff's Complaint asserts a due process claim that must be dismissed in its entirety because the doctrine of sovereign immunity bars Plaintiff's claim against the Board and his claim against Die for monetary damages, and, additionally, the Complaint fails to state a viable due process claim as a matter of law.

---

[1] This memorandum is filed on behalf of Defendants Board of Trustees of the University of Illinois and Rony Die, in his official and individual capacity. Plaintiff's Complaint and other court filings also name "Does 1-30" as purported defendants, but does not otherwise identify such people, nor has service been completed on any defendant other than the Board or Die. The Complaint states only that "Does 1-30 are members of UI staff that served as members of the subcommittee" that adjudicated Plaintiff's discipline but does not allege that they are unidentifiable or otherwise unknown to Plaintiff. Compl. ¶6.

**FACTS ALLEGED**

Plaintiff Rahul Malhotra ("Plaintiff") was a student at the University of Illinois Urbana-Champaign ("UIUC") during the 2020-2021 school year.  *See* Compl. ¶¶ 2, 3.  In January 2021, Plaintiff was living in the Alpha Iota Omicron fraternity house, where he subleased a room on the first floor.  *Id.* at ¶¶ 10-11.  Plaintiff was informed by other tenants that there would be a party at the fraternity house on the night of January 29, 2021.  *Id.* at ¶ 12.  Plaintiff and the other tenants discussed university COVID restrictions that limited the number of people allowed to gather, and his housemates told him that attendance would be strictly limited in compliance with UIUC's Covid-19 restrictions and negative Covid tests and masks would be required for all guests.  *Id.* at ¶¶ 12-13. The University's COVID-19 restrictions at that time included a directive to comply with an August 19, 2020 Emergency Order from the City of Champaign regarding parties and social gatherings, which required any "occupant, tenant, or other person" with "possessory control over the premises where a party or gathering occurs" to control their premises and "prevent a party or gathering from being or becoming a nuisance party," defined as a gathering that exceeds 10 persons (other than occupants or their immediate family members).  *See* Group Ex. A attached hereto, COVID-19 Related Emergency Order 20-27 from City of Champaign and Amendments ("Emergency Order"); Group Ex. B attached hereto, UIUC August 20, 2020 MASSMAIL. Another University COVID-19 restriction delivered in a January 20, 2021 MASSMAIL directed students to limit in-person interactions to essential activities and warned that "students who do not follow all COVID-related expectations face university disciplinary action, up to and including dismissal."  Group Ex. B, January 20, 2021 MASSMAIL.[2]

---

[2] In considering a Rule 12(b)(6) motion to dismiss, the Court may take judicial notice of documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice, including matters of public record.  *Newcomb v. Brennan*, 558 F.2d 825, 829 (7th Cir. 1977); *Scott v. Bender*, 893 F. Supp. 2d 963, 971 (N.D. Ill. 2012).  The Emergency Order and UIUC's MASSMAIL directives are all publicly available and a matter of public

At around 12:20 am the night of the January 29, 2021 party, Plaintiff's roommate knocked on his door and informed him that there were loud noises coming from the second floor. Compl. at ¶¶ 15-16.  At that point, Plaintiff could hear people walking up and down the stairs and other sounds coming from the party on the second and third floors.  *Id.* at ¶¶ 16-17.  Plaintiff alleges that he left his room to try to shut down the party and saw unmasked attendees on the stairs outside his apartment.  *Id.* at ¶¶ 17-18.  He then went to the second floor where he saw many people throughout the apartment – in the kitchen area, common area, and inside rooms.  *Id.* at ¶ 19.  Plaintiff alleges he turned off the music and told the people on the second floor they needed to leave, and then went to the third floor to tell the guests on that floor they needed to leave.  *Id.* at ¶¶ 19-20.  A police officer then entered the room and told Plaintiff to go downstairs.  *Id.* at ¶¶ 22-23.  Plaintiff complied, at which point he encountered a female student who was unconscious from alcohol intoxication lying on the staircase outside Plaintiff's first-floor apartment and being attended to by her friend, a paramedic, and another police officer.  *Id.* at ¶¶ 24-25.  Plaintiff assisted the female student by calling and paying for an Uber to take her back to her dorm.  *Id.* at ¶ 25.  Plaintiff and his two housemates then continued to speak to and provide information to the police officer.  *Id.* at ¶¶ 26-27.

The following week, on February 5, 2021, Plaintiff and two of his housemates received initial notice that they were charged with violations of UIUC's Student Code and COVID-19 restrictions based on their role of "hosting" the January 29 party.  *Id.* at ¶¶ 28, 45.  The February 5, 2021 Charge Notice letter to Plaintiff stated:  "It is alleged that you hosted a party in violation

---

record.  *See* *https://champaignil.gov/2020/08/19/city-of-champaign-issues-emergency-orders-regarding-use-of-face-coverings-parties-and-social-gatherings/*, *https://covid19.illinois.edu/more-information/massmail-announcements/*,

of Chancellor's Order to avoid social gatherings and other nonessential activities and Champaign

County's COVID-19 Emergency Order." *See* Charge Notice attached here as Exhibit C. [3]

More specifically, Plaintiff alleges that he was charged with violating the following three

separate provisions of the Student Code:

- Section 1-302.g: Providing false or misleading information to a member or agent of the university acting in the performance of his or her duty, or failing to comply with reasonable directions of a member or agent of the University acting in the performance of his or her duty.
- Section 1-307.a.2: No student may give or otherwise furnish alcoholic beverages to any person under twenty-one years of age. Additionally, no student may authorize or permit a residence which he or she occupies to be used for possession or consumption of alcohol by any person under twenty-one years of age.
- Section 1-302.a.3: Conduct that threatens the health and safety of any person, including but not limited to reckless disregard for the health or safety of any person.

*Id*. Plaintiff met with Rony Die, Assistant Dean of Students at UIUC ("Die"), about these

charges. *Id.* at ¶¶ 29, 31. He told Die what happened the night of January 29, including who he

had spoken to, and provided evidence to Die that he had been working on homework that night.

*Id.* at ¶ 5, 29-31. After this meeting, Plaintiff was notified that a hearing on the charges against

him would be held before a subcommittee comprised of UIUC staff, and that this subcommittee

would make a determination as to whether he was responsible for the charges against him. *See id.*

at ¶ 31. Plaintiff appeared at this hearing, where he had the opportunity to give a statement to the

---

[3] Although evaluation of a motion to dismiss for failure to state a claim is generally limited to review of the facts alleged in the pleadings, a court may consider documents attached to a motion to dismiss if they are referred to in the complaint and are central to the plaintiff's claim. *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012); *see Wilson v. Northland Coll.*, No. 17-CV-337-SLC, 2018 WL 341749, at *1 (W.D. Wis. Jan. 9, 2018); *see also Ludlow v. Nw. Univ.*, 79 F. Supp. 3d 824, 838 (N.D. Ill. 2015) (considering a Chicago tribune article presented by the defendant that was referenced in the complaint); *Doe v. Univ. of Chicago*, No. 16 C 08298, 2017 WL 4163960, at *10 (N.D. Ill. Sept. 20, 2017) (considering a 2015 Manual referred to within an Amended Complaint). Further, to the extent that such a document conflicts with the allegations of the complaint, the document controls. *See, e.g., Massey v. Merrill Lynch & Co.*, 464 F.3d 642, 645 (7th Cir. 2006). The Complaint references Plaintiff's receipt of notice of charges on February 5, 2021 and asserts that such notice was inadequate as a central thrust of his due process claim, and the letter conveying such notice of charges on that date is attached here as Exhibit C.

subcommittee, testify on his own behalf, and answer questions from the subcommittee. *Id.* at ¶ 31-33.

On March 26, 2021, Plaintiff was notified that the subcommittee had found him responsible for violating all three sections of UIUC's Student Code and that he was dismissed from UIUC for two semesters. *Id.* at ¶¶ 2, 34, 38. Plaintiff appealed the subcommittee's decision, and as part of his appeal, provided a copy of the lease which showed that Plaintiff was not a signatory. *Id.* at ¶ 36. On April 14, 2021, Plaintiff's appeal was denied and the decision against him was upheld. *Id.* at ¶ 37.

On August 17, 2021, Plaintiff filed this Complaint against UIUC and Die alleging that UIUC's dismissal decision violated his Constitutional due process rights and seeking monetary, declaratory, and injunctive relief. *See id.* at ¶¶ 1-2. He alleges that he was denied due process with regard to his dismissal from UIUC, and as a result of the dismissal, has suffered severe emotional distress as well as serious threats to his chosen career in academia. *Id.* at ¶ 39.

## ARGUMENT

### I.    Standard of Review

A motion to dismiss under Rule 12(b)(1) asserts that the Court does not have jurisdiction over some or all of the subject matter of the complaint. Fed. R. Civ. P. 12(b)(1). "In the face of the motion to dismiss under Rule 12(b)(1), Plaintiff bears the burden of persuading the Court that subject-matter jurisdiction exists." *Lohrasbi v. Bd. of Trs. of Univ. of Ill.*, 2014 WL 12743795, at *2 (C.D. Ill. Feb. 6, 2014); *see* Fed. R. Civ. P. 12(h)(3). A motion under Rule 12(b)(6) tests the legal sufficiency of the complaint. *Mutter v. Madigan*, 17 F. Supp. 3d 752, 757 (N.D. Ill. 2014). To survive dismissal, a complaint must be supported by allegations that, if taken as true, plausibly suggest that the plaintiff is entitled to relief. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-

56 (2007).  The Court must accept the well-pleaded allegations in the complaint as true; however, legal conclusions and conclusory statements are not taken as true.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Where the well-pleaded facts do not permit the Court to infer more than the possibility of misconduct, the complaint has not shown that the pleader is entitled to relief as is required by Rule 8.  *Id.* at 679.

## II.   Plaintiff's Due Process Claim Against the Board and Claim for Monetary and Punitive Damages Against Die in his Official Capacity Must be Dismissed Under Rule 12(b)(1).

As an initial matter, Plaintiff's due process claim against the Board must be dismissed in its entirety for lack of jurisdiction pursuant to Rule 12(b)(1).  The Board cannot be sued under 42 U.S.C. § 1983 because it is not a "person" within the meaning of that statute and must be dismissed as a defendant for this reason alone.  *See Carmody v. Bd. of Trs. of the Univ. of Ill.*, 893 F.3d 397, 403 (7th Cir. 2018); *Snyder v. King*, 745 F.3d 242, 246 (7th Cir. 2014).  In addition, the Eleventh Amendment bars federal lawsuits against state agencies, including state universities and their governing bodies, and official-capacity claims against state officials.  *Carmody*, 893 F.3d at 403; *Council 31 of AFSCME v. Quinn*, 680 F.3d 875, 881 (7th Cir. 2012).  There are three exceptions to this sovereign immunity bar: (1) Congress can validly abrogate a state's immunity; (2) a state can consent to suit; and (3) private parties can sue individual state officials for prospective relief to enjoin ongoing violations of federal law (known as the *Ex parte Young* doctrine).  *Council 31*, 680 F.3d at 882.  None of these exceptions apply to Plaintiff's claim against the Board.  *See Carmody*, 893 F.3d at 403 ("This constitutional immunity extends to the Board of Trustees of the University of Illinois.").  Thus, Plaintiff's claim against the Board is barred by the doctrine of sovereign immunity.

With regard to Plaintiff's claim against Die in his official capacity – the *Ex parte Young* doctrine permits such a claim *only* for prospective injunctive relief to enjoin an ongoing violation

of federal law. *See Doe v. Bd. of Trs. of the Univ. of Illinois et al.*, No. 19-cv-1107, slip op. at 27 (C.D. Ill. Oct. 26, 2020)[4]; *Mutter*, 17 F. Supp. 3d at 758.  Thus, Plaintiff's official-capacity claim against Die for compensatory and punitive damages is barred by the Eleventh Amendment and must also be dismissed under Rule 12(b)(1).  *See id.*; *Carmody*, 893 F.3d at 403; *Council 31*, 680 F.3d at 882-83.

### III.    Plaintiff's Due Process Claim Must be Dismissed Under Rule 12(b)(6) for Failure to State a Viable Due Process Claim.

In addition, Plaintiff's Due Process claim must also be dismissed under Rule 12(b)(6) for failure to state a claim.  "The Due Process Clause is not a general fairness guarantee; its protection kicks in only when a state actor deprives someone of 'life, liberty, or property.'"  *Doe v. Purdue Univ.*, 928 F.3d 652, 659 (7th Cir. 2019) (quoting U.S. Const. amend. XIV, § 1).  To state a procedural Due Process claim, (1) Plaintiff must allege that he was deprived of a cognizable property or liberty interest, and (2) if he does so, Plaintiff must also sufficiently allege that the procedures by which he was deprived of that interest did not satisfy constitutional requirements. *See id.*  Plaintiff has not sufficiently alleged either of these elements with respect to his dismissal from UIUC.

### A.  Plaintiff Fails to Identify a Cognizable Property or Liberty Interest.

Plaintiff does not allege a viable cognizable property or liberty interest.  First, the Complaint does not specify the alleged property interest(s) on which the Complaint is based, but it appears Plaintiff seeks to allege a property interest in his education at UIUC.  Seventh Circuit precedent clearly holds that a public university student does not have a stand-alone property interest in his education.  *See Purdue*, 928 F.3d at 659-60; *Charleston v. Bd. of Trs. of Univ. of Ill. at Chi.*, 741 F.3d 769, 772 (7th Cir. 2013).  Instead, in the higher education setting, "any property

---

[4] A copy of this Order is attached as Exhibit D.

interest is a matter of contract between the student and the university." *Purdue*, 928 F.3d at 660. To establish a property interest, a student must do more than show he had a contract with the university – he must establish that the contract entitled him to a specific right that the university allegedly violated. *Id.* (citing *Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 601 (7th Cir. 2009)). The student "must be specific about the source of this implied contract, the exact promises the university made to the student, and the promises the student made in return." *Id.* (quoting *Charleston*, 741 F.3d at 773). Here, the Complaint is devoid of any allegations even suggesting that UIUC breached a specific contractual promise to Plaintiff with respect to his discipline, much less any allegations that identify any such promise(s) with specificity. Plaintiff accordingly fails to identify a cognizable property interest.

Second, to the extent Plaintiff claims that UIUC deprived him of a liberty interest, his allegations are similarly defective. Plaintiff asserts only that he suffered "emotional injury, humiliation, as well as a serious setback to Plaintiff's desired career in academia," Compl. ¶ 39, which cannot establish a constitutionally protected liberty interest. "[T]he loss of reputation is not itself a loss of liberty, even when it causes serious impairment of one's future employment." *Purdue*, 928 F.3d at 662 (citation and internal quotation marks omitted); *see also O'Gorman v. City of Chi.*, 777 F.3d 885, 891 (7th Cir. 2015). Other courts have rejected Due Process claims based upon similar allegations. *See Paul v. Davis*, 424 U.S. 693, 712 (1976) (police flyers falsely asserting that plaintiff was a shoplifter did not trigger Due Process Clause even though they harmed his reputation); *Hinkle v. White*, 793 F.3d 764, 767-68 (7th Cir. 2015) (false rumors that plaintiff committed sexual abuse and arson did not trigger Due Process Clause even though they "gravely harmed" his reputation and seriously impaired his future employment prospects). Further, as a general rule, individuals do not have a constitutionally protected right to pursue a particular career.

*See Park v. Ind. Univ. Sch. of Dentistry*, 692 F.3d 828, 832 (7th Cir. 2012) (Due Process Clause did not protect student's interest in becoming a dentist).

Furthermore, while the Seventh Circuit has recently recognized that university students *may* have an "occupational liberty" interest, the limited circumstances in which such an interest can exist are not present here. *See Purdue*, 928 F.3d at 661-62. To state a claim for deprivation of occupational liberty, a plaintiff must satisfy a "stigma-plus test": he must allege (1) that the state disclosed information that damaged his reputation, (2) that the reputational harm made it "virtually impossible" for him to find employment in his chosen profession, and (3) that his legal status was altered, depriving him of a previously held right. *See Doe v. Trs. of Indiana Univ.*, 496 F. Supp. 3d 1210, 1216 (S.D. Ind. 2020) (citing Purdue, 928 F.3d at 661). The publication requirement of the stigma-plus test is met when disclosure of damaging information is (1) "compelled," (2) "certain," and (3) "not self-published." *Id.* (citing Purdue, 928 F.3d at 662). Notably, dissemination by the *defendant* and not by the plaintiff is a strict requirement in this Circuit. *See id.* (citing *Olivieri v. Rodriguez*, 122 F.3d 406, 408–409 (7th Cir. 1997)). For instance, in *Purdue*, the publication requirement was satisfied because the plaintiff-student was in a Navy ROTC program and therefore had a "legal obligation to authorize the disclosure" of his sexual misconduct finding to the Navy, his future employer. *Purdue*, 928 F.3d at 662.

Plaintiff's allegations are factually distinguishable from *Purdue*. Not only does Plaintiff fail to allege any element of the stigma-plus test, Plaintiff does not even allege that UIUC has disclosed his disciplinary record or that he has any legal obligation to do so to anyone. Moreover, Plaintiff neglects to explain how UIUC's disciplinary actions will negatively impact his alleged goal of working in academia. Any allegation or implication that Plaintiff will or may be required to disclose his disciplinary record if and when he decides to apply to a graduate program in his

academic field of interest is insufficient to satisfy the stigma-plus test. *See Indiana Univ.*, 496 F. Supp. 3d at 1216-17 (no liberty interest for student seeking business management career because any disclosure of disciplinary record during graduate school application would be voluntary).

In short, Plaintiff's allegations in the Complaint amount to even less than those rejected in *Doe v. Trustees of Indiana University*. 496 F. Supp. 3d at 1216-17. Plaintiff does not allege that he wishes to transfer to another college or university, will be unable to complete his degree at UIUC, or is under any legal obligation to disclose this discipline in a manner that will impact his future career. Plaintiff's due process claim must be dismissed in its entirety pursuant to Rule 12(b)(6) because Plaintiff does not and cannot identify a cognizable property or liberty interest of which he was allegedly deprived.

### B. UIUC Afforded Plaintiff All Process Required By Law.

Even if the Court were to determine that Plaintiff had alleged a cognizable property or liberty interest, Plaintiff's due process claim still fails because he has not alleged any actionable deprivation of any such interest. "When a right is protected by the Due Process Clause, a state 'may not withdraw [it] on grounds of misconduct absent[] fundamentally fair procedures to determine whether the misconduct has occurred.'" *Purdue*, 928 F.3d at 663 (quoting *Goss v. Lopez*, 419 U.S. 565, 574 (1975)). Courts have found that the Due Process Clause is satisfied where, as here, an accused student receives notice of the charges, an explanation of the evidence against him, and an opportunity to present his side of the story. *Id.*; *see Doe v. Cummins*, 662 F. App'x 437, 446 (6th Cir. 2016).

Plaintiff's own allegations establish that UIUC afforded him sufficient process with respect to his dismissal. Plaintiff asserts that he received notice of the charges against him on February 5, 2021. Compl. ¶¶ 28-29, 45. That notice was delivered in a written February 5, 2021 Charge Notice

that included the relevant provisions of the Student Code, specific references to UIUC COVID-19 directives, the date of the alleged violations, the alleged conduct that formed the basis of the charges, and a statement clarifying he was accused of hosting "a party in violation of Chancellor's Order to avoid social gatherings and other nonessential activities" and the Emergency Order.  Ex. C.  Moreover, Plaintiff had the opportunity to attend and participate in the hearing before the subcommittee on these charges, including speaking on his own behalf to present his defense and respond to questions by the subcommittee.  Compl. ¶¶ 29, 31.  Plaintiff also had the opportunity to appeal the subcommittee's decision, and did file an appeal, including presenting additional evidence.  *Id.* at ¶ 36.

Plaintiff asserts that this disciplinary process was "devoid of due process and completely arbitrary at every stage" without pleading any facts to support such vague and conclusory allegations.  *Id.* at ¶ 44.  The Complaint is also replete with contradictory admissions.  Plaintiff alleges he "could only guess as to what alleged behavior coincided with the specific charges against him," despite receiving an initial Charge Notice that: (1) "over 30 people were reported present at your residence, not wearing masks or social distancing"; and (2) "Two individuals were found unconscious at your residence due to alcohol intoxication. One of the unconscious individuals was confirmed to be under the age of twenty-one."  Ex. B.  He was also repeatedly questioned during the investigation and the hearing about these same issues on the night of the party.  Compl. ¶¶ 29, 32-33.  Plaintiff further alleges Defendants "failed to explain the basis" of the charge for furnishing alcohol to minors, yet he acknowledges that the Defendants "alleged that one underage person had been found intoxicated at Plaintiff's house."  *Id.* at ¶ 45(b)(i).

Finally, Plaintiff claims that the "subcommittee made its decision based on the mistaken belief that Plaintiff was a signatory on the lease," but Plaintiff admits that he subleased the

premises and "was living" there with "other tenants." *Id.* at ¶¶ 10-12, 35. Plaintiff also admits he was aware of UIUC COVID-19 restrictions on gatherings and that he and the other tenants discussed the need to comply with such restrictions on the number of people and mask wearing in preparation for the party at their residence. *Id.* at ¶¶ 12-13. Indeed, this Court can take judicial notice of UIUC's published directives for all students on August 20, 2020 and then January 20, 2021 (nine days before the party) to comply with local public health directives that required occupants of any dwelling to limit parties to a maximum of 10 people (other than the occupants or their immediate families). *See* Group Exs. A and B; *Newcomb v. Brennan*, 558 F.2d 825, 829 (7th Cir. 1977); *Scott v. Bender*, 893 F. Supp. 2d 963, 971 (N.D. Ill. 2012). In addition, under the plain language of the Emergency Order and three Student Code sections Plaintiff is charged with violating, it is irrelevant whether Plaintiff was a signatory on any lease. Group Ex. B; Compl. ¶ 45(a)-(c). The Emergency Order defined "host" as any "occupant," and Plaintiff himself alleges he "was living" at the location of the party. Ex. B; Compl. ¶ 10-11. Student Code 1-307(a)(2) addressing the under-age drinking violation also provides, ". . . [N]o student may authorize or permit a *residence which he occupies* or she occupies to be used for possession or consumption of alcohol by any person under twenty-one years of age." Compl. ¶ 45(b) (emphasis added). Not only does Plaintiff admit he was an occupant by alleging that he "was living" in the fraternity house, *id.* at ¶ 11, he also admits he was aware that there would be a party at the fraternity house on the night of January 29, 2021 and discussed with the "other tenants" in the house the need to comply with COVID-19 restrictions on people wearing masks and the number of people allowed at gatherings. *Id.* at ¶¶ 12-13.

Taken together, Plaintiff's allegations clarify that he was properly notified of the charges against him and was allowed an opportunity to be heard, which renders his own pleading

2:21-cv-02220-JBM-JEH  # 13  Filed: 12/01/21  Page 13 of 15

insufficient to allege a deprivation of due process. Moreover, Plaintiff also had the opportunity to address this alleged procedural deficiency by filing an appeal. *Id.* at ¶ 36; *see Cummins*, 662 F. App'x at 446-47 (alleged procedural deficiencies in plaintiffs' first disciplinary hearings were cured by university's decision to grant their appeals). UIUC considered his appeal and upheld the charges after a hearing. Compl. ¶ 37. Because Plaintiff's allegations are not sufficient to establish a deprivation of a constitutionally protected property or liberty interest, Plaintiff's due process claim also must be dismissed pursuant to Rule 12(b)(6) for this separate and independent reason.

**C. Plaintiff's Individual Capacity Claims in Count I Must Be Dismissed Under Rule 12(b)(6).**

In addition to the official capacity claim against Defendant Die that cannot survive, the Complaint's attempt to pursue a due process claim against Die in his individual capacity must also be dismissed. Compl. ¶¶ 5-6, 46-50. Plaintiff alleges only that Die decided "to take actions which violated the due process rights of Plaintiff," acting "under the color of law" and with "full knowledge that Plaintiff's due process rights have been violated." *Id.* at ¶¶ 46, 49-50. This purported individual-capacity claim against Die must be dismissed under Rule 12(b)(6) both for the reasons stated in Section III.B above and because Die is entitled to qualified immunity.

To assert an individual capacity claim, Plaintiff must allege (1) the official violated a constitutional right (2) that was clearly established at the time of the alleged violation, such that a reasonable public official would have known that his conduct was unlawful. *See Sonnleitner v York*, 304 F.3d 704, 716 (7th Cir. 2002). As discussed above, Plaintiff has not alleged a cognizable property or liberty interest of which he was deprived with respect to his dismissal, much less an interest that was "clearly established." Even if he had, Plaintiff has not alleged that he was deprived of any such interest without due process. Plaintiff thus necessarily fails to allege that Die caused or participated in the violation of any clearly established constitutional right, and Die is

13

accordingly entitled to qualified immunity. *See id.*; *Vose v. Kliment*, 506 F.3d 565, 568-72 (7th Cir. 2007) (granting motion to dismiss individual-capacity claims based on qualified immunity). Thus, Plaintiff's Due Process claim against Die in his individual capacity must be dismissed with prejudice under Rule 12(b)(6).

## **CONCLUSION**

For the reasons set forth above, Defendants Board of Trustees of the University of Illinois and Rony Die respectfully request that this Court dismiss the Complaint in its entirety with prejudice.

Dated: December 1, 2021

Respectfully submitted,

Defendants Board of Trustees of the University of Illinois and Rony Die,


By:   /s/ Peter G. Land
          One of their Attorneys

Peter G. Land (Lead Counsel) #6229659
Gwendolyn B. Morales #6297233
Husch Blackwell LLP
120 S. Riverside Plaza, Suite 2200
Chicago, Illinois 60606
(312) 655-1500
Peter.Land@huschblackwell.com
Gwendolyn.Morales@huschblackwell.com

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on the 1st day of December 2021, a copy of the above and

foregoing document was filed with the Clerk of Court using the CM/ECF system which sent

electronic notification of such filing to all the following:

        The Law Office of Keith Altman
        Keith Altman
        33228 West 12 Mile Road, Suite 375
        Farmington Hills, MI 48334
        T: (516) 456-5885
        keithaltman@kaltmanlaw.com

        /s/ Peter G. Land