E-FILED
Friday, 28 January, 2022  05:12:00 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| RAHUL MALHOTRA,                         ) | |
|                                              Plaintiff,     )  | **Case No: 21-CV-2220** |
| v.                                      ) | |
|                                                    )  | **Hon. Joe Billy McDade** |
| | **Magistrate Jonathan E. Hawley** |
| UNIVERSITY OF ILLINOIS AT               ) | |
| URBANA-CHAMPAIGN, through the           ) | |
| Board of Trustees (in their official capacity); ) | |
| RONY DIE (in his personal capacity);    ) | |
| and DOES 1-30 (in their personal capacity),  ) | |
|                                            Defendants.    ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
<u>PLAINTIFF'S AMENDED COMPLAINT PURSUANT TO RULES 12(B)(1) AND
12(B)(6)</u>[1]**

---

[1] This memorandum is filed on behalf of Defendants Board of Trustees of the University of Illinois and Rony Die, in his personal capacity. Plaintiff's Amended Complaint also names "Does 1-30" as purported defendants, but does not otherwise identify such people, nor has service been completed on any defendant other than the Board or Die. The Amended Complaint states only that "Does 1-30 are members of UI staff that served as members of the subcommittee" that adjudicated Plaintiff's discipline but does not allege that they are unidentifiable or otherwise unknown to Plaintiff. Am. Compl. ¶ 7.

Defendants Board of Trustees of the University of Illinois ("Board"), and Rony Die (in his personal capacity), hereinafter "Defendants," by and through their counsel, submit this Memorandum in Support of Defendants' Motion to Dismiss Plaintiff's Amended Complaint.

## INTRODUCTION

Plaintiff Rahul Malhotra ("Plaintiff"), an undergraduate student at the University of Illinois Urbana Champaign ("UIUC"), filed suit in this action on August 17, 2021 against the Board and Die in his official and individual capacities. The one-count Complaint asserted a Due Process claim challenging the outcome of UIUC's March 2021 internal disciplinary proceedings that dismissed Plaintiff for two semesters because of his role in "hosting" a party at his residence that violated the Student Code and COVID-19 mandates issued by UIUC and the City of Champaign. Defendants filed a motion to dismiss the Complaint on several grounds, including that: (1) sovereign immunity barred the Due Process claim against the Board and any official-capacity claim against Die for monetary damages; and (2) the Complaint failed to state a viable Due Process claim because it failed to identify a cognizable property or liberty interest and failed to allege deprivation of such an interest without due process. Moreover, Defendants' motion attached the COVID-19 mandates (of which the Court may take judicial notice) and the actual disciplinary charge letter (referenced in the Complaint and central to the assertion of a lack of "notice" for the Due Process claim), which established that Plaintiff was notified of the bases for all charges that led to his dismissal. Dkt. 13. Plaintiff's own allegations in that initial pleading further established that he had an "opportunity to be heard" both in interviews and testimony at a disciplinary hearing, as well as an opportunity to appeal. Plaintiff thus received all process he was due under UIUC's procedures and Seventh Circuit law, which required dismissal.

Instead of substantively addressing any of these pleading flaws, Plaintiff has filed an Amended Complaint that continues to ignore the key factors requiring dismissal of his Due Process claim. The Amended Complaint repeats the vast majority of the same facts alleged previously and does not attempt to address the content of the disciplinary charge letter or COVID-19 mandates that require dismissal of his Due Process claim. That strategy clarifies that Plaintiff lacks allegations of an absence of required process and seeks only to challenge, substantively, whether it was fair for UIUC to dismiss him for two semesters for hosting a party that violated pandemic-related restrictions, which is not the purpose of a Due Process claim. This new pleading also fails to correct the jurisdictional bar against pursuing such a claim against the Board itself in federal court. Instead, the Amended Complaint only changes the capacity in which Die is named – only in his personal capacity and not his official capacity – and adds citation to a different section of the Student Code that cannot support his asserted property interest.[2] These changes only strengthen the arguments in Defendants' initial motion by dooming any basis for injunctive relief, confirming the sovereign immunity barriers here, and confirming that Plaintiff cannot plead facts sufficient to state a valid Due Process claim. Therefore, as discussed more fully below, Defendants request that this Court dismiss the Amended Complaint in its entirely pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), with prejudice.

## FACTS ALLEGED

Plaintiff was a student at UIUC during the 2020-2021 school year. *See* Am. Compl. ¶¶ 2, 4. In January 2021, Plaintiff was living in the Alpha Iota Omicron fraternity house, where he subleased a room on the first floor. *Id.* at ¶¶ 12-13. Plaintiff was informed by other tenants that there would be a party at the fraternity house on the night of January 29, 2021. *Id.* at ¶ 14. Plaintiff

---

[2] The Amended Complaint also abandons any claim based on a purported liberty interest.

2

and the other tenants discussed UIUC COVID-19 restrictions that limited the number of people allowed to gather, and his housemates told him that attendance would be strictly limited in compliance with UIUC's restrictions and negative Covid tests and masks would be required for all guests. *Id.* at ¶¶ 14-15. UIUC's COVID-19 restrictions at that time included a directive to comply with an August 19, 2020 Emergency Order from the City of Champaign regarding parties and social gatherings, which required any "occupant, tenant, or other person" with "possessory control over the premises where a party or gathering occurs" to control their premises and "prevent a party or gathering from being or becoming a nuisance party," defined as a gathering that exceeds 10 persons (other than occupants or their immediate family members). *See* Group Ex. A attached hereto, COVID-19 Related Emergency Order 20-27 from City of Champaign and Amendments ("Emergency Order"); Group Ex. B attached hereto, UIUC August 20, 2020 MASSMAIL. Another UIUC COVID-19 restriction delivered in a January 20, 2021 MASSMAIL directed students to limit in-person interactions to essential activities and warned that "students who do not follow all COVID-related expectations face university disciplinary action, up to and including dismissal." Group Ex. B, January 20, 2021 MASSMAIL.[3]

At around 12:20 am the night of the January 29, 2021 party, Plaintiff's roommate knocked on his door and informed him that there were loud noises coming from the second floor. Am. Compl. at ¶ 18. Plaintiff could hear people walking up and down the stairs and sounds coming from the party on higher floors. *Id.* at ¶¶ 18-19. Plaintiff left his room to try to shut down the party and saw unmasked attendees on the stairs outside his apartment. *Id.* at ¶¶ 19-20. On the second

---

[3] In considering a Rule 12(b)(6) motion to dismiss, the Court may take judicial notice of documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice, including matters of public record. *Newcomb v. Brennan*, 558 F.2d 825, 829 (7th Cir. 1977); *Scott v. Bender*, 893 F. Supp. 2d 963, 971 (N.D. Ill. 2012). The Emergency Order and UIUC's MASSMAIL directives are all publicly available and a matter of public record. *See* https://champaignil.gov/2020/08/19/city-of-champaign-issues-emergency-orders-regarding-use-of-face-coverings-parties-and-social-gatherings/.

floor, he saw many people throughout the apartment – in the kitchen area, common area, and inside rooms. *Id.* at ¶ 21. Plaintiff turned off the music and told the people on the second floor they needed to leave, then went to the third floor to tell other guests to leave. *Id.* at ¶¶ 21-23. A police officer then entered the room and told Plaintiff to go downstairs. *Id.* at ¶¶ 24-25. Plaintiff complied, at which point he encountered a female student unconscious from alcohol intoxication lying on the staircase outside Plaintiff's first-floor apartment being attended to by her friend, a paramedic, and another police officer. *Id.* at ¶¶ 25-27. Plaintiff assisted the student by calling and paying for an Uber to take her back to her dorm. *Id.* at ¶ 27. Plaintiff and his two housemates then continued to speak to and provide information to the police officer. *Id.* at ¶¶ 28-29.

The following week, on February 5, 2021, Plaintiff and two of his housemates received notice that they were charged with violations of UIUC's Student Code and COVID-19 restrictions based on their role of "hosting" the January 29 party. *Id.* at ¶¶ 30, 48, 57. The February 5, 2021 notice letter to Plaintiff ("Charge Notice") included the following language:

> It is alleged that you hosted a party in violation of Chancellor's Order to avoid social gatherings and other nonessential activities and Champaign County's COVID-19 Emergency Order. Over 30 people were reported present at your residence, not wearing masks or social distancing. Two individuals were found unconscious at your residence due to alcohol intoxication. One of the unconscious individuals was confirmed to be under the age of twenty-one.

*See* Charge Notice attached here as Exhibit C.[4] Plaintiff was charged with violating the following three separate provisions of the Student Code:

---

[4] Although evaluation of a motion to dismiss for failure to state a claim is generally limited to review of the facts alleged in the pleadings, a court may consider documents attached to a motion to dismiss if they are referred to in the complaint and are central to the plaintiff's claim. *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012); *see Wilson v. Northland Coll.*, No. 17-CV-337-SLC, 2018 WL 341749, at *1 (W.D. Wis. Jan. 9, 2018); *see also Ludlow v. Nw. Univ.*, 79 F. Supp. 3d 824, 838 (N.D. Ill. 2015) (considering a Chicago tribune article presented by the defendant that was referenced in the complaint); *Doe v. Univ. of Chicago*, No. 16 C 08298, 2017 WL 4163960, at *10 (N.D. Ill. Sept. 20, 2017) (considering a 2015 Manual referred to within an Amended Complaint). Further, to the extent that such a document conflicts with the allegations of the complaint, the document controls. *See, e.g., Massey v. Merrill Lynch & Co.*, 464 F.3d 642, 645 (7th Cir. 2006). The Complaint references Plaintiff's receipt of

4

- Section 1-302.g: Providing false or misleading information to a member or agent of the university acting in the performance of his or her duty, or failing to comply with reasonable directions of a member or agent of the University acting in the performance of his or her duty.
- Section 1-307.a.2: No student may give or otherwise furnish alcoholic beverages to any person under twenty-one years of age. Additionally, no student may authorize or permit a residence which he or she occupies to be used for possession or consumption of alcohol by any person under twenty-one years of age.
- Section 1-302.a.3: Conduct that threatens the health and safety of any person, including but not limited to reckless disregard for the health or safety of any person.

Am. Compl. ¶¶ 30, 48, 57. Plaintiff met with Rony Die, Assistant Dean of Students at UIUC ("Die"), about these charges. *Id.* at ¶¶ 6, 31-33. He told Die what happened the night of January 29 and provided evidence that he had been working on homework. *Id.* at ¶ 31. Plaintiff was then notified that a hearing would be held before a subcommittee comprised of UIUC staff, which would determine whether he was responsible for those charges. *See id.* at ¶ 33. Plaintiff appeared at the hearing and had the opportunity to give a statement to the subcommittee, testify on his own behalf, and answer questions from the subcommittee. *Id.* at ¶ 33-35. On March 26, 2021, the subcommittee found Plaintiff responsible for violating all three sections of UIUC's Student Code and notified him that he was dismissed from UIUC for two semesters. *Id.* at ¶¶ 2, 36, 40. Plaintiff appealed the subcommittee's decision and provided a copy of the lease showing that Plaintiff was not a signatory. *Id.* at ¶ 38. On April 14, 2021, Plaintiff's appeal was denied. *Id.* at ¶ 39.

Plaintiff's initial Complaint against UIUC and Die alleged that UIUC's dismissal decision violated his Due Process rights and sought monetary, declaratory, and injunctive relief. *See* Dkt. 1, at ¶¶ 1-2. After receiving Defendants' motion to dismiss and supporting memorandum, Plaintiff filed the Amended Complaint on January 5, 2022. The Amended Complaint includes two counts – Count I against the Board and Count II against Die in his personal capacity – both of which assert

---

notice of charges on February 5, 2021 and asserts that such notice was inadequate as a central thrust of his due process claim, and the letter conveying such notice of charges on that date is attached here as Exhibit C.

a due process claim based on Plaintiff's two-semester dismissal. Am. Compl. ¶¶ 42-63. Plaintiff alleges that as a result of the Board's actions, he "continues to suffer an ongoing violation of his due process rights," and as a result of Die's actions, he has suffered "emotional injury, humiliation, as well as a serious deprivation of Plaintiff's property interest." *Id.* at ¶¶ 49, 63. He seeks injunctive relief from the Board and Die in the form of reinstatement to UIUC[5] and expungement of his disciplinary records, compensatory and punitive damages from Die, and attorney's fees and costs. *Id.* at p. 24.

## ARGUMENT

### I. Standard of Review

A motion to dismiss under Rule 12(b)(1) asserts that the Court does not have jurisdiction over some or all of the subject matter of the complaint. Fed. R. Civ. P. 12(b)(1). "In the face of the motion to dismiss under Rule 12(b)(1), Plaintiff bears the burden of persuading the Court that subject-matter jurisdiction exists." *Lohrasbi v. Bd. of Trs. of Univ. of Ill.*, 2014 WL 12743795, at *2 (C.D. Ill. Feb. 6, 2014); *see* Fed. R. Civ. P. 12(h)(3). A motion under Rule 12(b)(6) tests the legal sufficiency of the complaint. *Mutter v. Madigan*, 17 F. Supp. 3d 752, 757 (N.D. Ill. 2014). A complaint must be supported by allegations that, if taken as true, plausibly suggest that the plaintiff is entitled to relief. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). The Court must accept well-pleaded allegations as true; however, legal conclusions and conclusory statements are not taken as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Where the well-pleaded facts do not permit the Court to infer more than the possibility of misconduct, the complaint has not shown that the pleader is entitled to relief as is required by Rule 8. *Id.* at 679.

---

[5] An electronic "comment" included in the margins of the Amended Complaint asserts that "Plaintiff is going back to school in January." Am. Compl. at p. 24. Defendants can also confirm that Plaintiff has already re-enrolled as a student at UIUC.

## II. Plaintiff's Due Process Claim Against the Board (Count I) Must be Dismissed Under Rule 12(b)(1) for Lack of Jurisdiction.

Plaintiff's Due Process claim against the Board in Count I fails to correct the jurisdictional defect contained in the original Complaint and must be dismissed. As Defendants previously argued, the Board cannot be sued under 42 U.S.C. § 1983 because it is not a "person" within the meaning of that statute and must be dismissed as a defendant for this reason alone. *See Carmody v. Bd. of Trs. of the Univ. of Ill.*, 893 F.3d 397, 403 (7th Cir. 2018); *Snyder v. King*, 745 F.3d 242, 246 (7th Cir. 2014). The Eleventh Amendment also bars federal lawsuits against state agencies, including state universities and their governing bodies. *Carmody*, 893 F.3d at 403; *Council 31 of AFSCME v. Quinn*, 680 F.3d 875, 881 (7th Cir. 2012). "This constitutional immunity extends to the Board of Trustees of the University of Illinois." *Carmody*, 893 F.3d at 403. There are three exceptions to this sovereign immunity bar: (1) Congress can validly abrogate a state's immunity; (2) a state can consent to suit; and (3) private parties can sue individual state officials for prospective relief to enjoin ongoing violations of federal law (known as the *Ex parte Young* doctrine). *Council 31* at 882. None of these exceptions apply to Plaintiff's claim against the Board. Thus, sovereign immunity bars Count I, which must be pursuant to Rule 12(b)(1).

## III. Plaintiff's Claim For Injunctive Relief Against Die in His Personal Capacity Must Be Dismissed Pursuant to Rule 12(b)(6).

The Amended Complaint names Die in his personal capacity only, which precludes any injunctive relief. As noted, under the *Ex parte Young* doctrine, a plaintiff may only pursue a claim for equitable relief by seeking prospective injunctive relief to enjoin an ongoing violation of federal law by suing a state official in his *official* capacity. *See Council 31* at 882; *Ameritech Corp. v. McCann*, 297 F.3d 582, 586 (7th Cir. 2002). As a matter of law, Plaintiff cannot obtain equitable relief for the alleged Due Process violations from Die in his personal capacity.

Plaintiff is challenging UIUC's application of its disciplinary procedures to his case, including actions that Die took while "employed by [UIUC] as the Assistant Dean of Students" and "acting within the scope of [his] employment." Am. Compl. ¶¶ 6, 58. Because Plaintiff challenges actions allegedly taken by Die in his official capacity, Plaintiff cannot seek injunctive relief from Die in his personal capacity; as a private individual, Die could not grant such relief. *See Feit v. Ward*, 886 F.2d 848, 858 (7th Cir. 1989); *see also Ameritech Corp.*, 297 F.3d at 586 ("vindicating federal rights and holding state officials responsible to federal law [] cannot be achieved by a lawsuit against a state official in his or her individual capacity"). Because Plaintiff cannot seek injunctive relief against Die in his personal capacity as a matter of law, Plaintiff's personal capacity claim against Die for injunctive relief fails to state a claim for which relief can be granted and must be dismissed pursuant to Rule 12(b)(6).

Finally, dismissal of Plaintiff's equitable claim with prejudice is appropriate because the Amended Complaint indicates that Plaintiff has returned to UIUC for the Spring 2022 semester and thus the primary injunctive relief he seeks – reinstatement – is now moot. Am. Compl. at 24 ("Plaintiff is going back to school in January"); *see Mutter v. Rodriguez*, 700 F. App'x 528, 530-31 (7th Cir. Aug. 21, 2017) (student's claim for reinstatement was moot where his dismissal period had ended and he was "eligible to reinstate without court involvement"). Further amendment to the Amended Complaint to name a proper official-capacity defendant in order to seek reinstatement would thus be futile.

### IV. Plaintiff's Due Process Claims Must be Dismissed Under Rule 12(b)(6) for Failure to State a Viable Due Process Claim.

Plaintiff's minimal adjustments in the Amended Complaint only clarify that his Due Process claims must also be dismissed under Rule 12(b)(6) for failure to state a claim. "The Due Process Clause is not a general fairness guarantee; its protection kicks in only when a state actor

8

deprives someone of 'life, liberty, or property.'" *Doe v. Purdue Univ.*, 928 F.3d 652, 659 (7th Cir. 2019) (quoting U.S. Const. amend. XIV, § 1). To state a procedural Due Process claim, Plaintiff must allege that (1) he was deprived of a cognizable property or liberty interest, and (2) if he does so, the procedures by which he was deprived of that interest did not satisfy constitutional requirements. *See id.* Defendants' initial motion notified Plaintiff of the pleading requirements for a Due Process claim and the specific deficiencies of the Complaint, including that Plaintiff failed to identify a cognizable property or liberty interest and claimed to be ignorant of the bases for the charges against him despite the clear language of the Charge Notice. The Amended Complaint fails to correct these deficiencies and continues to attempt to assert a Due Process claim based on factual allegations that ignore the plain language of the Charge Notice to which his allegations refer, confirming that Plaintiff cannot state a viable Due Process claim.

### A. The Amended Complaint Still Fails to Identify a Property Interest.

In response to Defendants' initial motion, Plaintiff abandoned any claim based on a liberty interest and made only the barest adjustment to the Amended Complaint to attempt to identify a property interest.[6] Specifically, Plaintiff cites to one provision of the Student Code that provides UIUC will apply its internal procedures in adjudicating alleged violations of the Student Code. Am. Compl. ¶43 (citing Section 1-301(i)). That provision cannot establish a property interest.

As Defendants previously argued, Seventh Circuit precedent clearly holds that a public university student does not have a stand-alone property interest in his education. *See Purdue*, 928 F.3d at 659; *Charleston v. Bd. of Trs. of Univ. of Ill. at Chi.*, 741 F.3d 769, 772 (7th Cir. 2013). Instead, in the higher education setting, "any property interest is a matter of contract between the

---

[6] In their initial motion, Defendants argued to the extent Plaintiff sought to assert that UIUC deprived him of a liberty interest, his allegations were defective. *See* Dkt. 13 at pp. 8-10. The Amended Complaint clarifies that Plaintiff is asserting that UIUC deprived him only of an alleged property interest in his education, which abandons any asserted liberty interest. Am. Compl. ¶¶ 3, 43, 45, 51, 54, 63.

9

student and the University." *Purdue*, 928 F.3d at 660. To establish a property interest, a student must do more than show he had a contract with the university – he must establish that the contract entitled him to a specific right that the university allegedly violated. *Id.* (citing *Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 601 (7th Cir. 2009)). The student "must be specific about the source of this implied contract, the exact promises the university made to the student, and the promises the student made in return." *Id.* (quoting *Charleston*, 741 F.3d at 773).

The initial Complaint was devoid of any allegations even suggesting that UIUC breached a specific contractual promise, much less any allegations identifying any such promises with specificity. The Amended Complaint simply asserts that Plaintiff's alleged property interest in his education arose through "a contract that Plaintiff entered into with [UIUC]" and cites to § 1-301(i) of UIUC's Student Code, presumably as the promise allegedly violated by UIUC. *See* Am. Compl. ¶ 43. Section 1-301(i) addresses student discipline and stated only:

> Alleged violations of the Student Code noted in (h) above are resolved through procedures developed and approved by the Senate Committee on Student Discipline, its Subcommittees on Student Conduct, and Disciplinary Officers approved by the Senate Committee on Student Discipline. … These procedures may be found at conflictresolution.illinois.edu or by contacting the Office for Student Conflict Resolution. … Among other rights delineated in these procedures, the right to written notice of charges and an opportunity to respond to those charges are guaranteed.

UIUC Student Code 2020-2021, § 1-301(i), attached hereto as Exhibit D. Nothing in this language establishes a legally cognizable property interest because Section 1-301(i) merely states that UIUC will apply its disciplinary process. The Seventh Circuit has squarely rejected similar claims of a property interest in a contractually guaranteed university procedure "many times," making clear that "a plaintiff does not have a federal constitutional right to state-mandated process." *Charleston*, 741 F.3d at 773-74. *See also Sung Park v. Ind. Univ. Sch. of Dentistry*, 692 F.3d 828, 832 (7th Cir. 2012 ("Park's interest in contractually-guaranteed university process is not protected by the federal

10

Constitution."). Because Plaintiff has not identified a cognizable property interest of which he was allegedly deprived, his Due Process claims must be dismissed pursuant to Rule 12(b)(6).

### B. The Amended Complaint Clarifies that UIUC Afforded Plaintiff All Process Required By Law and Student Code § 1-301(i).

Moreover, even if the Court were to determine that Plaintiff alleged a cognizable property interest, the Amended Complaint clarifies that Plaintiff has not alleged any actionable deprivation of such interest. "When a right is protected by the Due Process Clause, a state 'may not withdraw [it] on grounds of misconduct absent[] fundamentally fair procedures to determine whether the misconduct has occurred.'" *Purdue*, 928 F.3d at 663 (quoting *Goss v. Lopez*, 419 U.S. 565, 574 (1975)). The Due Process Clause is satisfied where, as here, an accused student receives notice of the charges, an explanation of the evidence against him, and an opportunity to present his side of the story. *Id.*; *see Doe v. Cummins*, 662 F. App'x 437, 446 (6th Cir. 2016). Notably, the Student Code provision on which Plaintiff relies calls for these same procedural rights: "the right to written notice of charges and an opportunity to respond to those charges." Am. Compl. ¶ 43; Ex. D.

As argued in Defendants' initial motion, Plaintiff's own allegations continue to reveal that UIUC afforded him sufficient process with respect to his dismissal under both Student Code § 1-301 and applicable law. Plaintiff asserts that he received notice of the charges against him on February 5, 2021. Am. Compl. ¶¶ 30, 48, 57. That notice was delivered in a written February 5, 2021 Charge Notice that included:

- the relevant provisions of the Student Code;
- specific references to UIUC's COVID-19 directives;
- the date of the alleged violations;
- the alleged conduct that formed the basis of the charges; and
- a statement clarifying he was accused of hosting "a party in violation of Chancellor's Order to avoid social gatherings and other nonessential activities" and the Emergency Order.

11

Ex. C. Moreover, Plaintiff attended and participated in the subcommittee hearing on these charges, spoke to present his defense and respond to subcommittee questions, and appealed the subcommittee's decision, including presenting additional evidence. Am. Compl. ¶¶ 33-35, 38.

Plaintiff offers conclusions that this disciplinary process was "devoid of due process and completely arbitrary at every stage" without pleading any supporting facts. *Id.* at ¶ 47. The Amended Complaint is also replete with contradictory admissions, such as that Plaintiff "could only guess as to what alleged behavior coincided with the specific charges against him," despite him being repeatedly questioned during the investigation and the hearing about his actions on the night of the party. *Id.* ¶¶ 31, 33-36. Plaintiff also alleges Defendants "failed to explain the basis" of the charge for furnishing alcohol to minors yet acknowledges that Defendants "alleged that one underage person had been found intoxicated at Plaintiff's house." *Id.* at ¶¶ 48(b)(i), 57(e)(i).

Finally, Plaintiff claims that the "subcommittee made its decision based on the mistaken belief that Plaintiff was a signatory on the lease," while admitting that he subleased the premises and resided there. *Id.* at ¶¶ 13, 37. Plaintiff also admits he was aware of UIUC's COVID-19 restrictions on gatherings and that he and his roommates discussed the need to comply with such restrictions in preparation for the party at their residence. *Id.* at ¶¶ 14-15. Indeed, this Court can take judicial notice of UIUC's published directive for all students on January 20, 2021 (nine days before the party) to comply with local public health directives that required occupants of any dwelling to limit parties to a maximum of 10 people (other than the occupants or their immediate families). *See* Exs. A and B attached hereto; *Scott v. Bender*, 893 F. Supp. 2d 963, 971 (N.D. Ill. 2012) (in considering a Rule 12(b)(6) motion to dismiss, the Court may take judicial notice of documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice, including matters of public record). In addition, under the plain language of

12

the three Student Code policies Plaintiff was charged with violating, it is irrelevant whether Plaintiff was a signatory on the lease. Am. Compl. ¶¶ 48(a)-(c), 57(d)-(f). In fact, Student Code 1-307(a)(2) provides, ". . . [N]o student may authorize or permit a *residence which he occupies* or she occupies to be used for possession or consumption of alcohol by any person under twenty-one years of age." *Id.* at ¶¶ 48(b), 57(e) (emphasis added). Plaintiff not only admits he "lived" in the residence as a sublessee, but also admits he was aware that there would be a party at the residence on the night of January 29, 2021 and discussed with the "other tenants" the need to comply with COVID-19 restrictions on the number of people allowed at gatherings. *Id.* at ¶¶ 13-15.

Taken together, these allegations are insufficient to allege a deprivation of due process. Moreover, Plaintiff had the opportunity to address this alleged procedural deficiency by filing an appeal. *Id.* at ¶ 38; *see Cummins*, 662 F. App'x at 446-47 (alleged procedural deficiencies in plaintiffs' first disciplinary hearings were cured by university's decision to grant their appeals). UIUC considered his appeal and upheld the charges. Am. Compl. ¶ 39. Because Plaintiff's allegations cannot establish a deprivation of any alleged constitutionally protected property interest without due process, Counts I and II must be dismissed pursuant to Rule 12(b)(6).

V.      **Plaintiff's Damages Claim in Count II Must Be Dismissed Under Rule 12(b)(6).**

Count II of the Amended Complaint is asserted against Die in his personal capacity only. In addition to injunctive relief which he cannot obtain from Die in his personal capacity as a matter of law, as explained in Section III above, Count II also seeks compensatory and punitive damages. Plaintiff's claim for such damages must be dismissed under Rule 12(b)(6) for the reasons stated in Section IV above, because Plaintiff does not allege that Die had any role in the alleged deprivation of his alleged property right, and because Die is entitled to qualified immunity.

13

As noted, Plaintiff's allegations that his disciplinary process was "devoid of due process and completely arbitrary at every stage" are bare and conclusory, unsupported by any factual allegations and actually contradicted by Plaintiff's own admissions and the Charge Notice he received. Plaintiff's allegations regarding Die's own alleged misconduct are similarly dubious, unsupported, and insufficient. Plaintiff alleges that Die: (1) failed to explain the bases for the charges against Plaintiff and the reasoning for the findings against him; (2) "did nothing to change the outcome" of the subcommittee's hearing; and (3) rejected his appeal. Am. Compl. ¶¶ 37, 57. These allegations on their face are insufficient to state a claim that Die deprived Plaintiff of any alleged property right, as Plaintiff does not allege that Die was part of the subcommittee that made the initial decision in Plaintiff's case, had either the responsibility or authority under UIUC's procedures to "change the outcome" of the subcommittee hearing, or was the appellate officer who denied his appeal. Further, contrary to Plaintiff's allegations, the Charge Notice written by Die makes clear that Die *did* fully inform Plaintiff of the charges against him. *See* Ex. C.

In addition, Plaintiff's personal capacity claim against Die fails because Die is entitled to qualified immunity. To assert an individual capacity claim, Plaintiff must allege (1) the official violated a constitutional right (2) that was clearly established at the time of the alleged violation, such that a reasonable public official would have known that his conduct was unlawful. *See Sonnleitner v. York*, 304 F.3d 704, 716 (7th Cir. 2002). As discussed above, Plaintiff has not alleged a cognizable property interest of which he was deprived with respect to his dismissal, much less an interest that was "clearly established." Even if he had, Plaintiff has not alleged that he was deprived of any such interest without due process. And even if he had, Plaintiff has not alleged that Die had any role in the deprivation of such interest. Plaintiff thus fails to allege that Die caused or participated in the violation of any clearly established constitutional right, and Die is entitled to

qualified immunity. *See id.*; *Vose v. Kliment*, 506 F.3d 565, 568-72 (7th Cir. 2007) (granting motion to dismiss individual-capacity claims based on qualified immunity). Thus, Plaintiff's damages claim against Die in Count II must be dismissed with prejudice under Rule 12(b)(6).

## CONCLUSION

For the reasons set forth above, Defendants Board of Trustees of the University of Illinois and Rony Die respectfully request that this Court dismiss the Amended Complaint in its entirety with prejudice.

Dated: January 28, 2022

Respectfully submitted,

Defendants Board of Trustees of the University of Illinois and Rony Die,

By: /s/ Peter G. Land
One of their Attorneys

Peter G. Land (Lead Counsel) #6229659
Gwendolyn B. Morales #6297233
Husch Blackwell LLP
120 S. Riverside Plaza, Suite 2200
Chicago, Illinois 60606
(312) 655-1500
Peter.Land@huschblackwell.com
Gwendolyn.Morales@huschblackwell.com

15

**CERTIFICATE OF SERVICE**

The undersigned certifies that on the 28th day of January, 2022, a copy of the above and foregoing document was filed with the Clerk of Court using the CM/ECF system which sent electronic notification of such filing to all the following:

>The Law Office of Keith Altman
>Keith Altman
>33228 West 12 Mile Road, Suite 375
>Farmington Hills, MI 48334
>T: (516) 456-5885
>keithaltman@kaltmanlaw.com

                        /s/ Peter G. Land