E-FILED
Friday, 22 April, 2022  03:01:22 PM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

| | | |
|---|---|---|
| RAHUL MALHOTRA, | ) | |
| | ) | |
| Plaintiff, | ) | **Case No: 21-CV-2220** |
| | ) | |
| v. | ) | |
| | ) | **Hon. Joe Billy McDade** |
| | ) | **Magistrate Jonathan E. Hawley** |
| UNIVERSITY OF ILLINOIS AT | ) | |
| URBANA-CHAMPAIGN; | ) | |
| RONY DIE (in his official capacity); | ) | |
| DOES 1-30 (in their official and personal | ) | |
| capacity), | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
## PLAINTIFF'S SECOND AMENDED COMPLAINT PURSUANT TO RULE 12(B)(6)[1]

---

[1] This memorandum is filed on behalf of Defendants Board of Trustees of the University of Illinois and Rony Die, in his official capacity. The Second Amended Complaint continues to name "Does 1-30" as purported defendants, but only the University and Die have been served. The Second Amended Complaint states that "Does 1-30 are members of UIUC staff that served as members of the [subcommittee]" that adjudicated Plaintiff's discipline but does not allege that they are unidentifiable or unknown to Plaintiff. Sec. Am. Compl. ¶ 7. Further, this Court has already dismissed Plaintiff's individual-capacity claims against "Does 1-30" (and Die) with prejudice. Dkt. 23 at 7-10.

1

## **INTRODUCTION**

This motion seeks dismissal with prejudice of the Second Amended Complaint. Plaintiff Rahul Malhotra's ("Plaintiff") pleading repeats previously abandoned allegations and theories, fails to resolve prior pleading deficiencies, and cannot avoid dismissal of all claims now asserted against UIUC itself (not the Board of Trustees) and Rony Die ("Die"), now named only in his official capacity. Deficiencies in Plaintiff's initial Complaint included that: (1) sovereign immunity barred the Due Process claim against the Board and any official-capacity claim against Die for monetary damages; and (2) Plaintiff failed to identify a cognizable property or liberty interest and failed to allege deprivation of such an interest without due process. Plaintiff's own allegations further established that he had an "opportunity to be heard" both in interviews and testimony at a disciplinary hearing, as well as an opportunity to appeal. Plaintiff thus received all process he was due under UIUC's procedures and Seventh Circuit law, requiring dismissal.

After Defendants' opening filing explained these deficiencies, Plaintiff has acknowledged and sought to fix them. Plaintiff filed an Amended Complaint that removed his "liberty interest" allegation and named Die in his individual capacity only, but he failed to correct the vast majority of other pleading deficiencies. Defendants again moved to dismiss. Plaintiff's response brief abandoned various aspects of his claims and acknowledged pleading flaws. On March 8, 2022, this Court granted Defendants' motion to dismiss the Amended Complaint in its entirety, terminated the Board as a defendant, and dismissed Plaintiff's claims against the individual capacity defendants (Die and "Does 1-30") with prejudice. The Court noted that Plaintiff already had "two bites at the apple," and while "denial of leave to amend [was] not yet appropriate," the Court would "not grant a fourth bite if Plaintiff is unable to cure the deficiencies." Dkt. 23 at 6-7.

The Second Amended Complaint entirely fails to correct the deficiencies identified by the Court and in Defendants' prior motions to dismiss. For the reasons that follow, this entire case should now be dismissed with prejudice.

## FACTS ALLEGED

Plaintiff is a student at UIUC. Sec. Am. Compl. ¶ 4. In January 2021, Plaintiff was living in the Alpha Iota Omicron fraternity house, where he subleased a room. *Id.* at ¶¶ 14-15. Plaintiff was informed by other tenants that there would be a party at the fraternity house on the night of January 29, 2021. *Id.* at ¶ 16. Plaintiff and the other tenants discussed UIUC COVID-19 restrictions that limited the number of people allowed to gather, and his housemates told him that attendance would be strictly limited in compliance with UIUC's restrictions and negative Covid tests and masks would be required for all guests. *Id.* at ¶ 17. UIUC's COVID-19 restrictions at that time included a directive to comply with an August 19, 2020 Emergency Order from the City of Champaign regarding parties and social gatherings, which required any "occupant, tenant, or other person" with "possessory control over the premises where a party or gathering occurs" to control their premises and "prevent a party or gathering from being or becoming a nuisance party," defined as a gathering that exceeds 10 persons (other than occupants or their immediate family members). *See* Group Ex. A attached hereto, COVID-19 Related Emergency Order 20-27 from City of Champaign and Amendments ("Emergency Order"); Group Ex. B attached hereto, UIUC August 20, 2020 MASSMAIL. Another UIUC COVID-19 restriction delivered in a January 20, 2021 MASSMAIL directed students to limit in-person interactions to essential activities and warned that "students who do not follow all COVID-related expectations face university disciplinary action, up to and including dismissal." Group Ex. B, January 20, 2021 MASSMAIL.[2]

---

[2] In considering a Rule 12(b)(6) motion to dismiss, the Court may take judicial notice of documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice, including matters of public

HB: 4878-4757-1485.1

At around 12:20 am the night of the party, Plaintiff's roommate knocked on his door and informed him that there were loud noises coming from the second floor. Sec. Am. Compl. at ¶¶ 19-20. Plaintiff could hear people walking up and down the stairs and sounds coming from the party on higher floors. *Id.* at ¶¶ 20-21. Plaintiff left his room to try to shut down the party and saw unmasked attendees on the stairs outside his apartment. *Id.* at ¶¶ 21-22. On the second floor, he saw many people throughout the apartment, turned off the music, and told people they needed to leave; he then went to the third floor to tell other guests to leave. *Id.* at ¶¶ 23-25. A police officer then told Plaintiff to go downstairs; when Plaintiff did so, he encountered a female student unconscious from alcohol intoxication lying on the staircase outside Plaintiff's apartment being attended to by her friend, a paramedic, and another police officer. *Id.* at ¶¶ 26-29. Plaintiff called and paid for an Uber to take the student back to her dorm, and then he and two of his housemates continued to speak to and provide information to the police officer. *Id.* at ¶¶ 29-31.

The following week, on February 5, 2021, Plaintiff and two of his housemates received notice that they were charged with violations of UIUC's Student Code and COVID-19 restrictions based on their role of "hosting" the January 29 party. *Id.* at ¶¶ 32, 51, 64. The February 5, 2021 notice letter to Plaintiff ("Charge Notice") included the following language:

> It is alleged that you hosted a party in violation of Chancellor's Order to avoid social gatherings and other nonessential activities and Champaign County's COVID-19 Emergency Order. Over 30 people were reported present at your residence, not wearing masks or social distancing. Two individuals were found unconscious at your residence due to alcohol intoxication. One of the unconscious individuals was confirmed to be under the age of twenty-one.

---

record. *Newcomb v. Brennan*, 558 F.2d 825, 829 (7th Cir. 1977); *Scott v. Bender*, 893 F. Supp. 2d 963, 971 (N.D. Ill. 2012). The Emergency Order and UIUC's MASSMAIL directives are all publicly available and a matter of public record. *See https://champaignil.gov/2020/08/19/city-of-champaign-issues-emergency-orders-regarding-use-of-face-coverings-parties-and-social-gatherings/.*

HB: 4878-4757-1485.1

*See* Charge Notice attached here as Exhibit C.[3] Plaintiff was charged with violating the following three separate provisions of the Student Code:

- Section 1-302.g:  Providing false or misleading information to a member or agent of the university acting in the performance of his or her duty, or failing to comply with reasonable directions of a member or agent of the University acting in the performance of his or her duty.
- Section 1-307.a.2: No student may give or otherwise furnish alcoholic beverages to any person under twenty-one years of age. Additionally, no student may authorize or permit a residence which he or she occupies to be used for possession or consumption of alcohol by any person under twenty-one years of age.
- Section 1-302.a.3:  Conduct that threatens the health and safety of any person, including but not limited to reckless disregard for the health or safety of any person.

Sec. Am. Compl. ¶¶ 32, 51, 64. Plaintiff met with Die, Assistant Dean of Students at UIUC, about these charges. *Id.* at ¶¶ 6, 33-34. He told Die what happened the night of January 29 and provided evidence that he had been working on homework. *Id.* at ¶ 33. Plaintiff was notified that a hearing would be held before a subcommittee comprised of UIUC staff, which would determine whether he was responsible for the charges. *See id.* at ¶ 35. Plaintiff appeared at the hearing and had the opportunity to testify on his own behalf and answer questions from the subcommittee. *Id.* at ¶¶ 35-37. On March 26, 2021, the subcommittee found Plaintiff responsible for violating all three sections of UIUC's Student Code and notified him that he was dismissed from UIUC for two semesters. *Id.* at ¶¶ 2, 38, 42. Plaintiff appealed the subcommittee's decision and provided a copy of the lease showing that Plaintiff was not a signatory. *Id.* at ¶¶ 40, 72. On April 14, 2021, Plaintiff's appeal was denied. *Id.* at ¶ 41.

---

[3] Although evaluation of a motion to dismiss for failure to state a claim is generally limited to review of the facts alleged, "[d]istrict courts may … consider … documents attached to a motion to dismiss when they are referenced in the complaint and central to the plaintiff's claim." *Lax v. Mayorkas*, 20 F. 4th 1178, 1181 n.1 (7th Cir. 2021). To the extent that such a document conflicts with the allegations of the complaint, the document controls. *See, e.g., Massey v. Merrill Lynch & Co.*, 464 F.3d 642, 645 (7th Cir. 2006). The Second Amended Complaint references Plaintiff's receipt of notice of charges on February 5, 2021 and his assertion that such notice was inadequate is central to his due process claim, and the letter conveying such notice of charges on that date is attached here as Exhibit C.

HB: 4878-4757-1485.1

After this Court dismissed portions of Plaintiff's claims with prejudice and others with leave to seek a final "bite at the apple," Plaintiff filed a Second Amended Complaint, which includes only minimal adjustments. Plaintiff now attempts to name UIUC as a defendant and also names Die and Does 1-30 in their official capacities and seeks from them injunctive relief in the form of expungement of his disciplinary records. He also continues to attempt to sue these defendants in their individual capacities despite prior dismissal of such claims with prejudice. Plaintiff continues to assert a property interest, attempts to assert a liberty interest, and adds assertions of Die's alleged involvement in his disciplinary process that fail to establish that Plaintiff's proceeding did not satisfy due process requirements.

## ARGUMENT

A motion under Rule 12(b)(6) tests the legal sufficiency of the complaint. *Mutter v. Madigan*, 17 F. Supp. 3d 752, 757 (N.D. Ill. 2014).  A complaint must be supported by allegations that, if taken as true, plausibly suggest that the plaintiff is entitled to relief. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). The Court must accept well-pleaded allegations as true; however, legal conclusions and conclusory statements are not taken as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Where the well-pleaded facts do not permit the Court to infer more than the possibility of misconduct, the complaint has not shown that the pleader is entitled to relief as is required by Rule 8. *Id.* at 679.  The Second Amended Complaint fails to state a claim.

### I.    Plaintiff's Due Process Claim Against UIUC (Count A) Must Be Dismissed Because UIUC is Not a Proper Defendant Under Any Legal Theory.

After Plaintiff conceded that sovereign immunity protections and limits of Section 1983 claims prevent suit against UIUC's Board of Trustees, and after this Court terminated the Board as a defendant, Count A of the Second Amended Complaint purports to sue a new party:  UIUC

HB: 4878-4757-1485.1

itself. However, UIUC is not a suable entity. 110 ILCS 305/1; *Williams v. Univ. of Ill.*, 945 F. Supp. 163, 164 n.1 (N.D. Ill. 1996). Count A must be dismissed with prejudice.

## II.     Plaintiff's Official-Capacity Due Process Claim Against Die (Count B) Must Be Dismissed Under Rule 12(b)(6) for Failure to State a Claim.

Count B of the Second Amended Complaint now attempts to assert a Due Process claim against Die in his official capacity, seeking injunctive relief in the form of expungement of his disciplinary records.[4] Count B continues to suffer from fatal flaws identified in prior filings. "The Due Process Clause is not a general fairness guarantee; its protection kicks in only when a state actor deprives someone of 'life, liberty, or property.'" *Doe v. Purdue Univ.*, 928 F.3d 652, 659 (7th Cir. 2019) (quoting U.S. Const. amend. XIV, § 1). Plaintiff must allege that (1) he was deprived of a cognizable property or liberty interest, and (2) the procedures by which he was deprived of that interest did not satisfy constitutional requirements. *See id.* Defendants' prior motions to dismiss explained these pleading requirements and the specific ways in which Plaintiff's allegations fall short, including that he has failed to identify a cognizable property or liberty interest and claimed to be ignorant of the bases for the charges against him despite the clear language of the Charge Notice. The Second Amended Complaint fails to correct any of these deficiencies, confirming that Plaintiff cannot state a viable Due Process claim.

### A.     The Second Amended Complaint Still Fails to Identify a Cognizable Property Interest.

In its March 8, 2022 Order, this Court found the following allegations in the Amended Complaint insufficient to state a property interest:

---

[4] Plaintiff's Prayer for Relief also continues to seek compensatory and punitive damages against Die in his personal capacity. However, Plaintiff's personal capacity claim against Die has been dismissed with prejudice. Dkt. 23. Further, as the Board and Die previously argued, sovereign immunity bars any official-capacity claim against Die for monetary damages. *See* Dkt. 13, at 6-7. Accordingly, the only claim Plaintiff can assert in Count B is an official-capacity claim against Die for the injunctive relief of expungement of his disciplinary records.

HB: 4878-4757-1485.1

- Plaintiff had "a contract with UIUC in which Plaintiff promised to pay tuition, in a specific amount, on a certain day of the school year, and in exchange UIUC promised not to suspend or expel Plaintiff unless there was a violation of UIUC's disciplinary rules;"
- "This contract created an entitlement, so that if UIUC were to suspend or expel Plaintiff for a disciplinary violation and he denied it, Plaintiff would be entitled to a fair hearing;" and
- Section 1-301(i) of the UIUC Student Code identified the procedures that would be used to resolve alleged violations of the Student Code and stated that "[a]mong other rights delineated in those procedures, the right to written notice of charges and an opportunity to respond to those charges are guaranteed."

Dkt. 23 at 3-6. The Court observed that Plaintiff was "not actually claiming a property interest in his continued education at UIUC" but rather claiming "a property interest in the process described in § 1-301(i) of the UIUC Student Code." *Id.* at 5. It noted, however, that the "Seventh Circuit has held 'many times' that 'a plaintiff does not have a federal constitutional right to state-mandated process.'" *Id.* at 5-6 (quoting *Charleston v. Bd. of Trs. of Univ. of Ill. at Chi.*, 741 F.3d 769, 773 (7th Cir. 2013)). The Court thus found that Plaintiff failed to allege a constitutionally protected property interest as a matter of law. *Id.* at 6.

The Second Amended Complaint fails to cure this deficiency but, rather, weakens any assertion of a property interest by now alleging only that such an interest arose because Plaintiff paid tuition to UIUC. Sec. Am. Compl. at ¶¶ 45, 58. There is no attempt to identify a specific promise by UIUC to Plaintiff that UIUC breached; Plaintiff asserts only a stand-alone property interest in his education, which is insufficient as a matter of law, as this Court has already found. Dkt. 23 at 4; *Charleston*, 741 F.3d at 772-73. Plaintiff's failure to identify a cognizable property interest in his third bite at the apple requires dismissal pursuant to Rule 12(b)(6), with prejudice.

## B. The Second Amended Complaint Also Fails to Identify a Cognizable Liberty Interest.

Plaintiff's initial Complaint asserted that Plaintiff had a protected liberty interest in his "desired career in academia." Dkt. 1 at ¶ 39. Defendants' motion to dismiss that pleading explained

why that allegation was insufficient, and Plaintiff responded by abandoning this claim in his first Amended Complaint.  Plaintiff now, however, attempts to re-assert a liberty interest, this time in his "freedom to pursue a career as a health care consultant, his chosen occupation." Sec. Am. Compl. ¶¶ 46, 59. Plaintiff alleges that he suffered "irreparable reputational damage" because his "academic record will now reflect that [he] was dismissed for two semesters," and "[g]iven that [he] intends to pursue a career path that will involve attending graduate school, this information will invariably be disclosed by Defendants to any institution Plaintiff will apply to" and "any future employer Plaintiff may apply to." *Id.* at ¶¶ 53, 74, 81. For reasons previously articulated, these allegations fail to establish an actionable liberty interest.  Dkt. 13 at 8-10.

The Seventh Circuit has held that "the loss of reputation is not itself a loss of liberty, even when it causes serious impairment of one's future employment." *Purdue*, 928 F.3d at 662 (citation and internal quotation marks omitted); *see also O'Gorman v. City of Chi.*, 777 F.3d 885, 891 (7th Cir. 2015); *Paul v. Davis*, 424 U.S. 693, 712 (1976); *Hinkle v. White*, 793 F.3d 764, 767-68 (7th Cir. 2015). Further, as a general rule, individuals do not have a constitutionally protected right to pursue a particular career. *See Park v. Ind. Univ. Sch. of Dentistry*, 692 F.3d 828, 832 (7th Cir. 2012) (Due Process Clause did not protect student's interest in becoming a dentist).

Furthermore, while the Seventh Circuit has recognized that university students may have an "occupational liberty" interest, the limited circumstances in which such an interest can exist are not present here. *See Purdue*, 928 F.3d at 661-62. To state a claim for deprivation of occupational liberty, a plaintiff must satisfy a "stigma-plus test": he must allege (1) that the state disclosed information that damaged his reputation, (2) that the reputational harm made it "virtually impossible" for him to find employment in his chosen profession, and (3) that his legal status was altered, depriving him of a previously held right. *See Doe v. Bd. of Trs. of Indiana Univ.*, 496 F.

Supp. 3d 1210, 1216 (S.D. Ind. 2020) (citing *Purdue*, 928 F.3d at 661). The publication requirement of the stigma-plus test is met when disclosure of damaging information is (1) "compelled," (2) "certain," and (3) "not self-published." *Id.* (citing *Purdue*, 928 F.3d at 662). Notably, dissemination by the defendant and not by the plaintiff is a strict requirement in this Circuit. *See id.* (citing *Olivieri v. Rodriguez*, 122 F.3d 406, 408–409 (7th Cir. 1997)). For instance, in *Purdue*, the publication requirement was satisfied because the plaintiff-student was in a Navy ROTC program and therefore had a "legal obligation to authorize the disclosure" of his sexual misconduct finding to the Navy, his future employer. *Purdue*, 928 F.3d at 662.

Plaintiff's allegations are factually distinguishable from *Purdue*, as Plaintiff fails to allege *any* element of the stigma-plus test. Plaintiff does not allege that UIUC has disclosed his disciplinary record or that it has any legal obligation to do so to anyone. His allegations that UIUC will "invariably" disclose his disciplinary record in relation to some future application by Plaintiff to a graduate program or employer are wholly speculative; there are no allegations to even suggest that such disclosure would be compelled, certain, and not self-published. Moreover, Plaintiff neglects to explain how UIUC's disciplinary actions will negatively impact his alleged goal of working as a health care consultant. The mere allegation or implication that Plaintiff will or may be required to disclose his disciplinary record if and when he decides to apply to a graduate program or when he applies for a job in his field of interest is insufficient to satisfy the stigma-plus test as a matter of law. *See Indiana Univ.*, 496 F. Supp. 3d at 1216-17 (no liberty interest for student seeking business management career because any disclosure of disciplinary record during graduate school application would be voluntary). In short, Plaintiff's allegations in the Complaint amount to even less than those rejected in *Doe v. Trustees of Indiana University*. 496 F. Supp. 3d at 12, 16-17. Plaintiff does not allege that he is under any legal obligation to disclose this discipline

HB: 4878-4757-1485.1

in a manner that will impact his future education or career. Because Plaintiff does not and cannot identify a cognizable liberty interest of which he was allegedly deprived, his Due Process claim must be dismissed in its entirety pursuant to Rule 12(b)(6), with prejudice.

### C. UIUC Provided Plaintiff All Process Required By Law with Regard to His Suspension.

Finally, even if Plaintiff had identified a valid property or liberty interest at stake, his Due Process claims fail because Plaintiff has not alleged any actionable deprivation of such interest. "When a right is protected by the Due Process Clause, a state 'may not withdraw [it] on grounds of misconduct absent[] fundamentally fair procedures to determine whether the misconduct has occurred.'" *Purdue*, 928 F.3d at 663 (quoting *Goss v. Lopez*, 419 U.S. 565, 574 (1975)). The Due Process Clause is satisfied where, as here, an accused student receives notice of the charges, an explanation of the evidence against him, and an opportunity to present his side of the story. *Id.*; *see Doe v. Cummins*, 662 F. App'x 437, 446 (6th Cir. 2016).

As argued in Defendants' prior motions, Plaintiff's own allegations establish that UIUC afforded him sufficient process with respect to his dismissal as a matter of law. Plaintiff received notice of the charges against him on February 5, 2021. Sec. Am. Compl. ¶¶ 32, 51, 64. That notice was delivered in a written February 5, 2021 Charge Notice that included:

- the relevant provisions of the Student Code;
- specific references to UIUC's COVID-19 directives;
- the date of the alleged violations;
- the alleged conduct that formed the basis of the charges;  and
- a statement clarifying he was accused of hosting "a party in violation of Chancellor's Order to avoid social gatherings and other nonessential activities" and the Emergency Order.

*Id.* at Ex. C. Plaintiff attended and participated in the subcommittee hearing on these charges, spoke to present his defense and respond to subcommittee questions, and appealed the

subcommittee's decision, including presenting additional evidence in support of his appeal. *Id.* at ¶¶ 35-37, 40, 72.

In the Second Amended Complaint, Plaintiff alleges that this disciplinary process was "devoid of due process and completely arbitrary at every stage" *Id.* at ¶ 50. In support, it appears he offers a series of allegations regarding Die's alleged involvement in the process. Specifically, Plaintiff alleges:

- Die was responsible for bringing and investigating the "unjustified" charges against Plaintiff and had the authority to dismiss them for lack of sufficient evidence. *Id.* at ¶¶ 66-67.

- Die "was presented with numerous pieces of evidence that demonstrated Plaintiff's innocence," including: witness testimony that Plaintiff did not plan, attend, or host the January 29 party or furnish alcohol to minors at that party, and testimony and evidence that Plaintiff was studying that night and that his name was not on the lease. *Id.* at ¶ 68.

- Despite "overwhelming exculpatory evidence and the lack of any affirmative evidence indicating Plaintiff's guilt" Die "decided to move forward with prosecuting the charges against Plaintiff." *Id.* at ¶ 69.

- "Die's investigation and testimony was extremely influential on the Subcommittee's decision to find Plaintiff guilty of the above charges." *Id.* at ¶ 70.

- Die "told Plaintiff that the subcommittee made its decision based on the mistaken belief that Plaintiff was a signatory on the lease and therefore had legal responsibility for the actions of guests on the premises. Plaintiff responded that he had never been a signatory on the lease, but Dean Die did nothing to change the outcome." *Id.* at ¶ 71.

- Die "allowed the subcommittee to make their disciplinary decision on the basis of false information." *Id.* at ¶ 73.

These allegations do not support the conclusion that the process was either arbitrary or devoid of due process. Rather, the Second Amended Complaint is replete with contradictions and admissions that establish that Plaintiff had notice of the charges against him and an opportunity to present his defense and supporting evidence. For instance, Plaintiff alleges that he "could only guess as to what alleged behavior coincided with the specific charges against him," despite being

repeatedly questioned during the investigation and the hearing about his actions on the night of the party. Sec. Am. Compl. ¶¶ 30, 31, 33-38. Plaintiff also alleges Defendants "failed to explain the basis" of the charge for furnishing alcohol to minors yet acknowledges that Defendants "alleged that one underage person had been found intoxicated at Plaintiff's house." *Id.* at ¶¶ 51(b)(i), 64(e)(i).

Additionally, Plaintiff alleges that the "subcommittee made its decision based on the mistaken belief that Plaintiff was a signatory on the lease," or on the basis of "false information," but admits that he subleased a room in the house where the party was held and resided there. *Id.* at ¶¶ 15, 39, 51, 64, 71, 73. Plaintiff also admits he was aware that there would be a party at his residence, was aware of UIUC's COVID-19 restrictions on gatherings, and that he and his roommates discussed the need to comply with such restrictions in preparation for the party at their residence. *Id.* at ¶¶ 16-17, 68. Indeed, this Court can take judicial notice of UIUC's published directive for all students on January 20, 2021 (nine days before the party) to comply with local public health directives that required occupants of any dwelling to limit parties to a maximum of 10 people (other than the occupants or their immediate families). *See* Exs. A and B attached hereto; *Scott v. Bender*, 893 F. Supp. 2d 963, 971 (N.D. Ill. 2012) (the Court may take judicial notice of documents that are critical to the complaint and referred to in it, and information that is subject to judicial notice, including matters of public record). In addition, under the plain language of the three Student Code policies Plaintiff was charged with violating, it is irrelevant whether Plaintiff was a signatory on the lease. Sec. Am. Compl. ¶¶ 32, 51, 64. In fact, Student Code 1-307(a)(2) provides, ". . . [N]o student may authorize or permit a *residence which he occupies* or she occupies to be used for possession or consumption of alcohol by any person under twenty-one years of age." *Id.* at ¶¶ 32, 51(b), 64(e) (emphasis added). Plaintiff not only admits he "lived" in the residence as

HB: 4878-4757-1485.1

a sublessee, but also admits he was aware that there would be a party at the residence on the night of January 29, 2021 and discussed with the "other tenants" the need to comply with COVID-19 restrictions on the number of people allowed at gatherings. *Id.* at ¶¶ 15-17.

Moreover, Plaintiff's allegations establish that, at multiple times throughout the process, he presented his argument, with documentary evidence, that his name was not on the lease and this fact should exonerate him from the charges. Plaintiff alleges that: he provided this information to Die before Die initiated the conduct process; he "repeatedly explained to the Individual Defendants [i.e., the subcommittee] that his name was not on the lease of the house at the time of the incident;" "when the subcommittee made its decision, the Individual Defendants [i.e., subcommittee] knew or should have known that Plaintiff was never a signatory on the lease;" after the subcommittee's decision, he told Die he "had never been a signatory on the lease;" and he submitted an appeal of the subcommittee's decision in which he argued that his name was not on the lease at the time of the incident and provided "conclusive photo evidence" of this. *Id.* at ¶¶ 39, 40, 51(b)(ii)-(iii), 64(e)(ii)-(iii), 68, 71-72. The fact that both the subcommittee and appellate decision-maker received and considered this evidence and did not agree with Plaintiff's position does not establish a violation of due process. *See Pugel v. Bd. of Trs. of Univ. of Ill.*, 378 F.3d 659, 666 (7th Cir. 2004) ("Due process does not require decisionmakers to adopt the charged party's explanation.").

Further, any attempt by Plaintiff to allege that Die somehow improperly influenced the proceedings also falls flat, as this too is contradicted by Plaintiff's admissions. Plaintiff's allegations show *at most* that Die moved forward with the charges after Plaintiff provided him what Plaintiff considered to be "overwhelming exculpatory evidence," and that Die influenced the subcommittee's decision. Sec. Am. Compl. ¶¶ 69-70. But Plaintiff's own allegations establish that Die did not make either the initial decision on the charges against Plaintiff or the decision on

appeal. Rather, Plaintiff admits that the charges were initially evaluated by a subcommittee of UIUC staff, not including Die, which heard Plaintiff testify, heard Plaintiff argue that he should not be found responsible because his name was not on the lease, questioned Plaintiff directly, and issued the initial determination that Plaintiff was responsible for the three Student Code violations. *See id.* at ¶¶ 7, 35-38, 51(b)(ii), 64(e)(ii). There are no allegations to suggest that Die somehow improperly interfered with the subcommittee's decision-making process. Further, Plaintiff admits that a separate appellate decision-maker reviewed and upheld the subcommittee's decision. *See id.* at ¶¶ 40-41, 51(b)(iii), 64(e)(iii), 72. *See Cummins*, 662 F. App'x at 446-47 (alleged procedural deficiencies in plaintiffs' first disciplinary hearings were cured by university's decision to grant their appeals). These admissions doom Plaintiff's due process claim.

Ultimately, Plaintiff's allegations establish only that Plaintiff disagreed that he should have been either subjected to disciplinary proceedings or found responsible for violations of the Student Code, but these disagreements are insufficient to state a claim for violation of due process. *See Pugel*, 378 F.3d at 666. Because Plaintiff's allegations cannot establish a deprivation of any alleged constitutionally protected property interest without due process, Count B must be dismissed pursuant to Rule 12(b)(6) for this additional reason.

## CONCLUSION

For the reasons set forth above, Defendants Board of Trustees of the University of Illinois and Rony Die respectfully request that this Court dismiss the Second Amended Complaint in its entirety with prejudice.

HB: 4878-4757-1485.1

Dated: April 22, 2022

Respectfully submitted,

Defendants Board of Trustees of the University of
Illinois and Rony Die,


By:    /s/ Peter G. Land
            One of their Attorneys

Peter G. Land (Lead Counsel) #6229659
Gwendolyn B. Morales #6297233
Husch Blackwell LLP
120 S. Riverside Plaza, Suite 2200
Chicago, Illinois 60606
(312) 655-1500
Peter.Land@huschblackwell.com
Gwendolyn.Morales@huschblackwell.com

16

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on the 22nd day of April, 2022, a copy of the above and foregoing document was filed with the Clerk of Court using the CM/ECF system which sent electronic notification of such filing to all the following:

> The Law Office of Keith Altman
> Keith Altman
> 33228 West 12 Mile Road, Suite 375
> Farmington Hills, MI 48334
> T: (516) 456-5885
> keithaltman@kaltmanlaw.com

/s/ Peter G. Land

17