E-FILED
Tuesday, 19 July, 2022 02:23:21 PM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | | |
|---|---|---|
| RAHUL MALHOTRA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.  2:21-cv-02220 |
| | ) | |
| UNIVERSITY OF ILLINOIS AT | ) | |
| URBANA-CHAMPAIGN, *through the* | ) | |
| *Board of Trustees*; RONY DIE, *in his* | ) | |
| *official capacity*; & DOES 1–30, *in their* | ) | |
| *official capacities*, | ) | |
| | ) | |
| Defendants. | ) | |

# ORDER

This matter is before the Court on a Motion to Dismiss by Defendants Rony Die and University of Illinois at Urbana-Champaign (UIUC or the University). (Doc. 26). The Motion has been fully briefed and is ripe for review. For the following reasons, the Motion is granted.

## BACKGROUND

Following a party at a fraternity house in which Plaintiff sublet a room, he was charged with multiple violations of the UIUC Student Code. (Doc. 24 at 4–8). These charges led to student disciplinary proceedings, during which Plaintiff was found guilty and suspended for two semesters. (Doc. 24 at 9–11). Plaintiff thereafter brought the instant lawsuit against UIUC; Rony Die, in his official capacity; and other university officials, in their official capacities, alleging a deprivation of procedural due process.

1

## LEGAL STANDARD

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), Plaintiff's complaint must contain a "short and plain statement of the claim" sufficient to plausibly demonstrate entitlement to relief. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff is not required to anticipate defenses or plead extensive facts or legal theories; rather, the complaint need only contain enough facts "to present a story that holds together." *Twombly*, 550 U.S. at 570; *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). The Seventh Circuit has consistently noted the essential function of Rule 8(a)(2) is to put the defendant on notice. *Divane v. Nw. Univ.*, 953 F.3d 980, 987 (7th Cir. 2020) ("A complaint must 'give the defendant fair notice of what . . . the claim is and the grounds upon which it rests.'" (quoting *Twombly*, 550 U.S. at 555)).

On review of a Rule 12(b)(6) motion, courts construe the complaint in the light most favorable to the plaintiff. *See United States ex rel. Berkowitz v. Automation Aids, Inc.*, 896 F.3d 834, 839 (7th Cir. 2018) (citing *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016)). This means "accept[ing] all of the well-pleaded facts as true and 'draw[ing] all reasonable inferences [from those facts] in favor of the plaintiff.'" *Id.* (quoting *Kubiak*, 810 F.3d at 480–81). The court "may reject sheer speculation, bald assertions, and unsupported conclusory statements." *Taha v. Int'l Bhd. of*

*Teamsters, Loc.* 781, 947 F.3d 464, 469 (7th Cir. 2020). " 'Naked assertions devoid of factual enhancement' [are] insufficient." *Dabbs v. Peoria Cnty. Ill.*, No. 1:16-cv-01463, 2017 WL 3574999, at *2 (C.D. Ill. Jan. 12, 2017) (quoting *Iqbal*, 556 U.S. at 678), *aff'd*, 690 F. App'x 416 (7th Cir. 2017)).

## DISCUSSION

Plaintiff's Second Amended Complaint asserts two procedural due process claims: one against UIUC and one against Defendants Die and Does 1–30 in their official capacities[1] (collectively, the Individual Defendants). Plaintiff seeks both injunctive relief and monetary damages. For the following reasons, the Court holds Plaintiff has failed to state a legally cognizable claim.

### I.   Due Process Claim Against UIUC

In his Second Amended Complaint, Plaintiff names UIUC as a defendant after previously conceding the Board of Trustees of the University of Illinois could not be sued under 42 U.S.C. § 1983. Plaintiff's concession was well-founded. "The Board of Trustees, as part of the State, is not a 'person' capable of being sued for damages under § 1983." *Barnes v. Bd. of Trs. of Univ. of Ill.*, 946 F.3d 384, 391 (7th Cir. 2020) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Haynes v. Ind. Univ.*, 902 F.3d 724, 731 (7th Cir. 2018)).

It is puzzling why Plaintiff would then choose to sue UIUC in the Board of Trustees' stead, as this choice in defendant suffers the same defect. "[A] state

---

[1] Plaintiff's claims against the Individual Defendants in their individual capacities have already been dismissed with prejudice, so Plaintiff was barred from reasserting those claims here.

university is an alter ego of the state, and, under *Will*, a 'State is not a person' under § 1983." *Kaimowitz v. Bd. of Trs. of Univ. of Ill.*, 951 F.2d 765, 767 (7th Cir. 1991).

Plaintiff's references to *Concilio De Salud Integral De Loiza, Inc. v. Perez-Perdomo*, 551 F.3d 10 (1st Cir. 2008), do not assist him. (*See* doc. 29 at 6). First, *Concilio* is a First Circuit case, so its precedential value is limited here. Second, the defendant in *Concilio* was an individual: the secretary of Puerto Rico's Department of Health. *Id.* at 11. It is well-established that state officials may be sued in their official capacities for injunctive relief. *See Ex Parte Young*, 209 U.S. 123 (1908). But a claim against UIUC—or its Board of Trustees as an entity, for that matter—is not a claim against a state official in their official capacity and cannot arise under § 1983 per *Will*.

Accordingly, Plaintiff's claim against UIUC must be dismissed with prejudice.

## II. Due Process Claim Against Individual Defendants in Their Official Capacities

There are two familiar elements to any procedural due process claim: first, the claimant must "identify the protected property or liberty interest at stake," and second, the court "must determine what process is due under the circumstances." *Charleston v. Bd. of Trs. of Univ. of Ill. at Chi.*, 741 F.3d 769, 772 (7th Cir. 2013) (citing *Omosegbon v. Wells*, 335 F.3d 668, 674 (7th Cir. 2003)). Plaintiff alleges both a property interest and a liberty interest in his Second Amended Complaint. Each argument will be addressed in turn.

*(1)     Property Interest*

As stated in the Court's earlier dismissal Order, college students do not have "a stand-alone property interest in an education at a state university." *Id.* To assert a protectable property interest in this context, a student must demonstrate they have "a *legally protected entitlement* to [their] continued education at the university," such as an agreement between the university and student that the student "would be dismissed only for good cause." *Id.* at 773 (emphasis in original).

Plaintiff has not cured any of the errors this Court found in his First Amended Complaint. In fact, save for a few deletions, Plaintiff has resubmitted an *identical* argument as to how he had a cognizable property interest, (*compare* doc. 22-1 at 7–8, *with* doc. 29 at 7–8), followed by a short section wherein Plaintiff asserts "[a] valid contract was entered into. Plaintiff paid the provide[d] for tuition, entitling Plaintiff to continued educational instruction from UIUC." (Doc. 29 at 9). Insofar as Plaintiff is making the same arguments he previously made, this Court will not rearticulate the reasons why they fail.

Plaintiff's new iteration of the argument still misses the point. Showing that Plaintiff entered into a valid contract with the University is not enough. Plaintiff must also "establish that the contract entitled him to the specific right that the university allegedly took": "the right to a continuing education." *Doe v. Purdue Univ.*, 928 F.3d 652, 660 (7th Cir. 2019) (citations omitted). It is not enough to make the conclusory statement that, because a contract existed, Plaintiff was entitled to continued education from the institution. "[T]he student's complaint must be specific

about the source of this implied contract, the exact promises the university made to the student, and promises the student made in return." *Charleston*, 741 F.3d at 773. He must "point to an identifiable contractual promise that the [university] failed to honor." *Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 602 (7th Cir. 2009) (citations omitted). Plaintiff has pointed to no new contractual promises and simply asserts the existence of a contractual relationship is enough of a contractual promise to satisfy this requirement. But if the basic contractual relationship between university and student could satisfy this requirement, anyone who was suspended from a university for any reason other than failure to pay tuition would have suffered a deprivation of constitutional property. The Seventh Circuit has disavowed interpreting the requirement this broadly. *See, e.g., Williams v. Wendler*, 530 F.3d 584, 589 (7th Cir. 2008). Because Plaintiff has pointed to no identifiable contractual promise aside from a provision this Court has already rejected as insufficient, Plaintiff has again failed to state a claim as to this count.

*(2)   Liberty Interest*

Plaintiff also asserts a liberty interest in his Second Amended Complaint. Defendant contends Plaintiff raised a liberty interest in his initial Complaint but then dropped it in his First Amended Complaint before reasserting it here. (Doc. 27 at 8–9). However, it is not clear that Plaintiff *ever* raised a liberty interest before now. His initial complaint did not explicitly provide which of life, liberty, or property he had been denied. (Doc. 1). His First Amended Complaint only explicitly alleged a property interest. (Doc. 21). To that end, when the Court granted Plaintiff leave to

6

amend, it was only contemplating that Plaintiff would correct factual deficiencies regarding the claim of a property interest. *See* (Doc. 23 at 7) ("[T]he Court will not grant a fourth bite if Plaintiff is unable to cure the deficiencies *identified herein*.") (emphasis added). It did not anticipate Plaintiff would use the opportunity to raise an entirely new claim.

Regardless, Plaintiff alleges he has a "constitutionally protected liberty interest in his freedom to pursue a career as a health care consultant, his chosen occupation," (Doc. 24 at 10), and the Seventh Circuit has recognized a cognizable liberty interest in pursuing the career of one's choice, *see, e.g.*, *Lawson v. Sheriff of Tippecanoe Cnty.*, 725 F.2d 1136, 1138 (7th Cir. 1984) ("The concept of liberty in Fourteenth Amendment jurisprudence has long included the liberty to follow a trade, profession, or other calling."). In order to succeed on this theory, Plaintiff must sufficiently plead the "stigma-plus" test, which "requires [the claimant] to show that the state inflicted reputational damage accompanied by an alteration in legal status that deprived him of a right he previously held." *Doe v. Purdue Univ.*, 928 F.3d 652, 661 (7th Cir. 2019).

Taken as true, the facts in the Second Amended Complaint show Plaintiff satisfies the "plus" portion of this test. In *Purdue*, the court held a change in status from "a full-time student in good standing to one suspended for an academic year" satisfies this requirement. *Id* at 662. This is directly comparable here, where Plaintiff asserts he was a student in good standing prior to the adjudication and finding of guilt by the University; after the hearing, Plaintiff was suspended for two semesters.

Plaintiff, however, stumbles on the "stigma" portion of the test. To show adequate stigmatization, Plaintiff must plead "(1) he was stigmatized by the [defendant's] actions; (2) the stigmatizing information was publicly disclosed; and (3) he suffered a tangible loss of other employment opportunities as a result of the public disclosure." *Dupuy v. Samuels*, 397 F.3d 493, 509 (7th Cir. 2005). While Plaintiff has adequately shown disclosure, he has not demonstrated sufficient stigmatization.

The Seventh Circuit has repeatedly held "only defamatory statements that are disclosed or made public can stigmatize a person." *E.g.*, *id.* at 514. That said, imminent, certain disclosure can suffice in some situations. In *Dupuy*, childcare workers who were accused of child abuse were subject to investigation by the Illinois Department of Children and Family Services (DCFS). *Id.* at 493. At the close of the investigation, if DCFS determined there was credible evidence to support the allegations, the agency would designate the report as "indicated" and would place the report on the State Central Register for a period of five years. *Id.* at 497. By statute, any childcare worker seeking employment had to submit to a background check that "include[d] a check of the central register to determine whether the person has an indicated report against them." *Id.* The court held "[b]ecause a prospective employee's status is disseminated to his potential employer, by operation of state law, during the hiring process, we believe that the plaintiffs have met the publication requirement." *Id.* at 510. This holding tacitly endorsed a constructive dissemination test—that is, where the disclosure of damaging information is certain to occur in any situation where a claimant pursues her chosen occupation, dissemination may be presumed

even if the information has not yet been affirmatively disclosed. *But see Johnson v. Martin*, 943 F.2d 15, 17 (7th Cir. 1991) (holding "potentially stigmatizing information which remains in a discharged employee's personnel file and has not been disseminated beyond the proper chain of command within the police department has not been" disclosed).

The question here, then, is whether Plaintiff has alleged facts more similar to those in *Dupuy* or those in *Johnson*. Plaintiff alleges his "academic record will now reflect that he was dismissed for two semesters" and "this information will invariably be disclosed by defendants to any institution [or employer] Plaintiff will apply to." (Doc. 24 at 14–15). These facts are bareboned and somewhat conclusory, but they are distinguishable from those in *Johnson*. Unlike in *Johnson*, where the damaging information was simply placed in the plaintiff's personnel file and there was only a speculative likelihood the information would be disseminated, here Plaintiff alleges not only that his record will now reflect the disciplinary action that was taken against him but also that UIUC will certainly disclose that information when he applies to graduate schools. (Doc. 24 at 14–15). Plaintiff "intends to pursue a career path that will involve attending graduate school" (doc. 24 at 14–15), and so long as he does, the threat of dissemination is non-speculative. While perhaps Plaintiff should have alleged that graduate universities typically require the disclosure of such records, the fact that these institutions require undergraduate transcripts as part of the

application process is common knowledge.[2] Taking Plaintiff's allegations as true, these facts meet the constructive dissemination test. The damaging information is certain to be disclosed to all graduate institutions to which Plaintiff applies.[3]

Plaintiff has also adequately alleged UIUC, not he, will disclose the information. *Purdue* is instructive on this point. There, the university disclosed damaging information about the plaintiff to the Navy after the plaintiff authorized the university to do so. *Purdue*, 928 F.3d at 661. Because the information was affirmatively disclosed, the court was not required to do the above analysis and focused solely on *who* disclosed the information. Purdue argued, "[b]ecause John permitted the disclosure . . . he cannot complain that Purdue stigmatized him." *Id.* Generally speaking, "the consent of another to the publication of [a] defamatory matter concerning him is a complete defense to his action for defamation." Restatement (Second) of Torts § 583. However, in *Purdue*, the Seventh Circuit determined consent may be overridden when disclosure is "compelled," "certain," and "not self-published." *Purdue*, 928 F.3d at 662. There, because "Purdue, not John, revealed to the Navy that it had found him guilty of sexual violence, and John had a

---

[2] "A court may take judicial notice of an adjudicative fact that is both not subject to reasonable dispute and either 1) generally known within the territorial jurisdiction of the trial court or 2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *GE Cap. Corp. v. Lease Resol. Corp.,* 128 F.3d 1074, 1081 (7th Cir. 1997) (internal quotation marks omitted).
[3] The same cannot be said for employment in Plaintiff's chosen field. It is not common knowledge whether academic records—as opposed to the fact of graduation or certification—must be tendered to obtain employment in the healthcare consultant field. And Plaintiff has not alleged sufficient facts to allow the Court to make that inference.

legal obligation to authorize the disclosure," the court determined the plaintiff's compelled consent did not constitute a defense to the plaintiff's claim.

Here, Plaintiff will be required to direct UIUC to transmit his transcripts to graduate schools when he applies. This authorization is a condition precedent to admission to the graduate programs that would allow Plaintiff to pursue his chosen career. Therefore, because the disclosure is certain and compulsory, as in *Purdue*, Plaintiff's consent does not defeat his claim. *See also Dupuy*, 397 F.3d at 510 (emphasis in original) (holding where childcare workers were required, "*as a condition of employment*," to authorize employers to conduct a background check which would reveal past child abuse reports, the authorization was compelled and certain and, therefore, not a defense to the workers' claims). Therefore, Plaintiff satisfies the publication requirement of the stigma-plus test.

But this is not enough. Plaintiff must further demonstrate a "tangible loss of . . . employment opportunities." *Dupuy*, 397 F.3d at 509. This can be shown where it is "virtually impossible for him to seek employment in his field of choice," *Purdue*, 928 F.3d at 661, or where the information has "the effect of blacklisting 'the plaintiff from comparable jobs,' " *Doe v. Trs. of Ind. Univ*, 496 F. Supp. 3d 1210, 1218 (S.D. Ind. 2020) (quoting *Townsend v. Vallas*, 256 F.3d 661, 670 (7th Cir. 2001)). In *Purdue*, this was shown where the plaintiff was expelled from the Navy ROTC program and prohibited from re-enrolling. *Id.* at 663. In *Dupuy*, it was shown where "Illinois law requires prospective employers to consult the central register before hiring an

11

individual and to notify DCFS in writing of its decision to hire a person who has been indicated as a perpetrator of child abuse or neglect." 397 F.3d at 511.

Plaintiff has not shown that his suspension from UIUC will make it virtually impossible for him to attend graduate school or find employment in the field of his choice. He alleges only that his record will be disclosed to any school or employer to which he applies. (Doc. 24 at 15). But disclosure alone does not satisfy the stigma-plus test. Plaintiff does not suggest he will be prohibited from entering the health care profession nor that his suspension will cause graduate institutions or future employers to subject him to onerous procedural requirements that make admitting or hiring Plaintiff more trouble than it is worth. Worse, the Second Amended Complaint does not even allege it will be particularly difficult for Plaintiff to attend a graduate school or find a job in the field of his choice nor what institutions will do with the damaging information upon receipt. At best, the Court can infer the suspension may make it harder to attain this goal, but this does not "establish the kind of foreclosure of opportunities amounting to a deprivation of liberty." *Bd. of Regents v. Roth*, 408 U.S. 564, 574 n.13 (1972). To meet this standard, Plaintiff needed to allege that the record of his suspension presented a nearly insurmountable obstacle; instead, he has alleged, at best, a setback.

For these reasons, Plaintiff's Complaint remains inadequate despite a second attempt at curing deficiencies. He continues to fail to allege a sufficient factual basis for relief. Even reading the Complaint liberally, the Court can find nothing to suggest Plaintiff could satisfy the legal standard the Seventh Circuit has repeatedly

12

espoused. Therefore, because Plaintiff was warned that continued submission of legally inadequate complaints would result in dismissal with prejudice, the Court will not afford Plaintiff another bite at the apple. *See, e.g.*, *Lee v. Ne. Ill. Reg'l Commuter R.R. Corp.*, 912 F.3d 1049, 1052–53 (7th Cir. 2019).

## CONCLUSION

IT IS THEREFORE ORDERED that the Motion to Dismiss by Defendants Rony Die and University of Illinois at Urbana-Champaign (doc. 26) is GRANTED; Plaintiff's Second Amended Complaint is DISMISSED WITH PREJUDICE. The case is TERMINATED.

SO ORDERED.

Entered this 19th day of July 2022.

s/ Joe B. McDade
_____
JOE BILLY McDADE
United States Senior District Judge
