In the

# United States Court of Appeals
## For the Seventh Circuit

No. 22-2469

RAHUL MALHOTRA,
                        *Plaintiff-Appellant*,

*v.*

UNIVERSITY OF ILLINOIS AT URBANA-CHAMPAIGN, *et al.*,
                        *Defendants-Appellees*.

Appeal from the United States District Court for the
Central District of Illinois.
No. 2:21-cv-02220 — **Joe Billy McDade**, *Judge*.

ARGUED APRIL 25, 2023 — DECIDED AUGUST 8, 2023

Before RIPPLE, ST. EVE, and PRYOR, *Circuit Judges*.

PRYOR, *Circuit Judge*. After finding that Rahul Malhotra had hosted a party during the COVID-19 pandemic, the University of Illinois at Urbana-Champaign suspended him for two semesters. Malhotra sued the University and several of its officials under 42 U.S.C. § 1983, alleging Due Process

violations under the Fourteenth Amendment.[1] The district court dismissed the suit, concluding that Malhotra had failed to adequately plead the requisite property or liberty interest to state a due process claim. We affirm.

## I. BACKGROUND

In reviewing the dismissal of Malhotra's complaint, we take his allegations as true and view them in the light most favorable to him. *Muskegan Hotels, LLC v. Patel*, 986 F.3d 692, 695 (7th Cir. 2021). Malhotra subleased a room in a fraternity house while attending the University of Illinois at Urbana-Champaign in January 2021. The University prohibited students from permitting underage drinking in their residences. At the time, because of the COVID-19 pandemic, the University also restricted the number of people who could attend social gatherings.

According to Malhotra, a few days after he moved in, other residents of the fraternity house decided to throw a party. Malhotra was not involved in planning or hosting the party, and he had been assured by its organizers that the party would comply with the University's COVID restrictions. The night of the event, Malhotra was wearing noise-canceling headphones and studying in his first-floor room when his roommate alerted him to loud noises coming from upstairs. Malhotra investigated and discovered a large group of people partying, including a young woman who was visibly intoxicated. The party ended after police officers and campus patrol arrived at the house.

---

[1] Malhotra also brought Fifth Amendment claims, but he does not pursue these claims on appeal, meaning any arguments relating to them are waived. *O'Neal v. City of Chicago*, 588 F.3d 406, 409 (7th Cir. 2009).

2:21-cv-02220-JBM-JEH   # 35-2   Filed: 08/30/23   Page 3 of 11
Case: 22-2469      Document: 00714252801      Filed: 08/30/2023      Pages: 11

No. 22-2469                                                                 3

The next week, the University charged Malhotra and other residents of the fraternity house with violating the University's code of conduct by disregarding COVID restrictions and allowing underage drinking. Malhotra met with Rony Die, the University's Assistant Dean of Students, and explained that he had been studying in his room and had nothing to do with the party. After the meeting, Malhotra was notified that he would have a hearing before the "Subcommittee on Undergraduate Student Conduct" to determine whether he was responsible for the violations. Malhotra appeared at the hearing, testified in his defense, and answered questions from the subcommittee.

Several weeks later, the subcommittee found Malhotra guilty of all charges and suspended him for two semesters. Dean Die explained to Malhotra that he had been held responsible because he was a signatory on the fraternity house's lease.

Malhotra, however, had not signed the lease; he had merely subleased a room. He appealed the subcommittee's decision, attaching a copy of the lease as evidence. The suspension was upheld.

Malhotra then filed suit under 42 U.S.C. § 1983. In the second amended complaint, Malhotra named as defendants the University of Illinois at Urbana-Champaign, as well as several University staff in their personal and official capacities including Dean Die. He argued that the University's decision to suspend him for two semesters violated his Fourteenth Amendment rights because the University failed to give him a proper hearing as outlined in its student code. As a remedy, Malhotra sought money damages from the individual defendants. He also sought an injunction, against both the

4 No. 22-2469

individual defendants and the University, that would require them to expunge the disciplinary charges from his record.

The district court granted the defendants' motion to dismiss the complaint for failure to state a claim. FED. R. CIV. P. 12(b)(6). The court ruled that Malhotra's claim against the University—an alter ego of the state—was not cognizable, and that his claims against Dean Die and other officials failed because he did not allege a constitutionally protected property or liberty interest as required under the Fourteenth Amendment. Malhotra appeals.

## II. Discussion

This court reviews de novo the grant of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Peterson v. Wexford Health Sources, Inc.*, 986 F.3d 746, 751 (7th Cir. 2021).

### A.

Malhotra sought different types of relief against three categories of defendants: (1) injunctive relief against the University, (2) injunctive relief against Dean Die and staff members in their official capacities, and (3) monetary relief against Dean Die and staff members in their personal capacities.[2] Before considering the specifics of his allegations, we must first sort out who was a proper party to the lawsuit.

---

[2] These are the forms of relief that Malhotra requested in his "prayer for relief" in the second amended complaint. Because another section of the second amended complaint could be read to suggest that Malhotra also sought monetary relief against the individual defendants in their official capacities, it is important to note that these damages are unavailable. Section 1983 does not allow awards of damages against

2:21-cv-02220-JBM-JEH # 35-2 Filed: 08/30/23 Page 5 of 11
Case: 22-2469 Document: 00714252801 Filed: 08/30/2023 Pages: 11

No. 22-2469 5

Section 1983 allows a plaintiff to sue a "person" who, acting under color of state law, has violated the plaintiff's constitutional rights. *Jones v. Cummings*, 998 F.3d 782, 786 (7th Cir. 2021). If successful, the plaintiff may recover damages or obtain injunctive relief. 42 U.S.C. § 1983.

Malhotra's claim for injunctive relief against the University fails at the outset because the University is not a "person" within the meaning of § 1983. The district court concluded that the University is an alter ego of the state, rather than a person, and Malhotra does not contest this conclusion. *See Haynes v. Indiana Univ.*, 902 F.3d 724, 731 (7th Cir. 2018) ("The University and its Board of Trustees are state agencies for sovereign-immunity purposes."); *Kaimowitz v. Bd. of Trustees of Univ. of Illinois*, 951 F.2d 765, 767 (7th Cir. 1991) (concluding that "a state university is an alter ego of the state"). This is significant given § 1983 authorizes suits only against "person[s]." Because the University is an alter ego of the state, Malhotra could not sue it under this statute. *Barnes v. Bd. of Trustees of Univ. of Illinois*, 946 F.3d 384, 391 (7th Cir. 2020); *Holton v. Indiana Horse Racing Comm'n*, 398 F.3d 928, 929 (7th Cir. 2005). Accordingly, to the extent Malhotra pursues claims against the University under 42 U.S.C. § 1983, we affirm their dismissal.

We turn next to Malhotra's claims of injunctive relief against the individual defendants in their official capacities. Even though we treat an official capacity claim against a state actor as a suit against the governmental unit for which the

---

states, and official-capacity suits against state actors are treated as suits against the states themselves. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64, 70–71 (1989); *Elim Romanian Pentecostal Church v. Pritzker*, 22 F.4th 701, 703 (7th Cir. 2022).

actor works (here, the State of Illinois), *Bridges v. Dart*, 950 F.3d 476, 478 (7th Cir. 2020), the exception established in *Ex parte Young*, 209 U.S. 123 (1908), allows these claims to go forward. *Ex parte Young* holds that a plaintiff may sue a state official for prospective relief if the plaintiff seeks to enjoin ongoing violations of federal law. *Id.* at 159–60. The theory is that an official actively flouting the law is representing only himself, not the state. *See Lukaszczyk v. Cook County*, 47 F.4th 587, 604 (7th Cir. 2022) (describing the doctrine). Malhotra's official capacity claims fall within the situation contemplated by *Ex parte Young*: he seeks to compel state officials to expunge his suspension from his record on grounds that their failure to do so continues to violate his due process rights. *See Doe v. Purdue University*, 928 F.3d 652, 666–67 (7th Cir. 2019) (concluding that a student's "marred [disciplinary] record" is a continuing harm). [3]

Malhotra could also proceed against Dean Die and the other staff in their personal capacities for money damages. Each was a "person" who Malhotra alleged violated his constitutional rights.

In sum, the University was not a proper defendant to the suit, but the other defendants were. Thus, moving forward,

---

[3] *Ex parte Young* applies only to state officials and therefore cannot save Malhotra's claim against the University. *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) (explaining that the doctrine "has no application in suits against the States and their agencies"); *Peirick v. Indiana Univ.-Purdue Univ. Indianapolis Athletics Dep't*, 510 F.3d 681, 696 (7th Cir. 2007) (concluding that a plaintiff could not proceed against the Board of Trustees of Indiana University "even on her claims for prospective injunctive relief").

we will evaluate only Malhotra's personal and official capacity claims against the individual defendants.

B.

We turn now to Malhotra's argument that the individual defendants violated his procedural due process rights. The Fourteenth Amendment prevents a state from depriving a person of "property" or "liberty" without due process of law. U.S. CONST. amend. XIV, § 1. A procedural due process analysis therefore consists of two steps. First, we must identify the protected property or liberty interest at stake. Second, if the plaintiff was deprived of one of those interests, we must determine what process was due under the circumstances. *Charleston v. Bd. of Trustees of Univ. of Illinois at Chicago*, 741 F.3d 769, 772 (7th Cir. 2013). The district court concluded that Malhotra's claim failed at the first step, and we agree. Malhotra did not plausibly allege that the defendants deprived him of a property or liberty interest.

1.

We first address whether Malhotra adequately alleged that the individual defendants deprived him of a constitutionally protected property interest. In his complaint, Malhotra asserted that he had a property interest in his continued education because he "paid tuition." On appeal, he elaborates that he and the University entered into "an express contract," in which he paid tuition in exchange for a "promise not to be expelled or suspended unless [he] violated the institutional rules."

The problem with Malhotra's argument is that attending a university does not automatically create a constitutional property right. Our cases establish that students do not have

a stand-alone property interest in their continued education at state universities. *Charleston*, 741 F.3d at 772. This is because, unlike with grade schools, the law does not entitle each person to an education at a public university. *Purdue*, 928 F.3d at 660. Rather, to have a legally protected entitlement to continued education at a state university, a plaintiff must point to something more. He must not only allege the existence of an express or implied contract, but he must also establish that the contract "entitled him to the specific right that the university allegedly took, 'such as … the right not to be suspended without good cause.'" *Purdue*, 928 F.3d at 660 (quoting *Bissessur v. Indiana Univ. Bd. of Trustees*, 581 F.3d 599, 601 (7th Cir. 2009)). Put simply, "the student's complaint must be specific about the source of this [express or] implied contract, the exact promises the university made to the student, and the promises the student made in return." *Charleston*, 741 F.3d at 773.

Because Malhotra failed to sufficiently plead that the University officials violated a specific contractual right between the parties, he did not allege a constitutionally protected property interest in remaining enrolled at the University. Despite having had multiple opportunities to amend, Malhotra never provided the source of any express contract, nor did he identify any specific promise by the University or any promises he made to the University. Instead, Malhotra alleged only that he paid tuition. Then he assumes on appeal that his act of paying tuition created a return promise from the University to either suspend him only for good cause or to follow its own procedures when deciding whether to suspend him. Unfortunately for Malhotra, our case law does not allow us to make this assumption; he needed to allege facts that plausibly

2:21-cv-02220-JBM-JEH  # 35-2  Filed: 08/30/23  Page 9 of 11
Case: 22-2469      Document: 00714252801      Filed: 08/30/2023      Pages: 11

No. 22-2469                                                                 9

suggested the existence of an express or implied contract. Because Malhotra failed to meet the threshold requirement of alleging that the individual defendants deprived him of a constitutionally protected interest, our analysis ends there, and we cannot review whether the defendants followed the University's internal process in deciding to suspend him. *See Charleston*, 741 F.3d at 773 (holding that a plaintiff does not have a constitutional right to state-mandated process).

In sum, because Malhotra has not alleged that he had a constitutionally protected property interest, we cannot evaluate whether the actions of the University officials unfairly stripped him of any such interest.

2.

We turn now to whether Malhotra adequately alleged that the individual defendants deprived him of a constitutionally protected liberty interest. Malhotra alleged that he had a liberty interest in pursuing his chosen career of a healthcare consultant, and that the defendants will "invariably" disclose his disciplinary record to any graduate school or employer to which he applies. On appeal, he maintains that the suspension adversely affected his pursuit of this career because he "may suffer harm to his future career prospects."[4]

To succeed on a claim that the defendants deprived him of a liberty interest, Malhotra had to satisfy the "stigma plus" test, which required him to allege both that he suffered a

---

[4] At oral argument, counsel did not mention the healthcare-consultant-career plans alleged in Malhotra's second amended complaint, and instead stated that Malhotra wishes to pursue a law degree. Our conclusion—that he failed to allege a loss of liberty—applies regardless of his chosen vocation.

reputational injury ("stigma") and an alteration in legal status that deprived him of a right he previously held ("plus"). *Mann v. Vogel*, 707 F.3d 872, 878 (7th Cir. 2013). Liberty in the Fourteenth Amendment includes the pursuit of "a trade, profession, or other calling." *Lawson v. Sheriff of Tippecanoe County*, 725 F.2d 1136, 1138 (7th Cir. 1984). In turn, a state actor can violate the Constitution by depriving a plaintiff of his "occupational liberty"—his right to pursue a career of his choice. *Purdue*, 928 F.3d at 661. That said, "the loss of reputation is not itself a loss of liberty," even when the reputational loss causes a "serious impairment of one's future employment." *Purdue*, 928 F.3d at 662 (citation and quotation marks omitted). A state actor infringes on a liberty interest only by "cast[ing] doubt on an individual's … reputation" to such a degree that "it becomes virtually impossible for the [individual] to find new employment in his chosen field." *Doyle v. Camelot Care Centers, Inc.*, 305 F.3d 603, 617 (7th Cir. 2002) (citation and quotation marks omitted).

Malhotra's allegations are too speculative to plausibly suggest that it will be virtually impossible for him to pursue a career as a healthcare consultant. Even if University officials will "invariably" disclose his suspension to graduate schools and employers, this at most suggests—as Malhotra's brief acknowledges—that his career prospects "may" be affected. After his suspension, Malhotra can return to the University, graduate, and then apply to a variety of graduate schools or jobs in the field of his choice. He has not alleged that he applied to these schools or jobs yet none would take him. While we acknowledge that future schools and employers might not look favorably on a suspension for violating the University's rules, it is far from clear that they would reflexively turn Malhotra away for this reason. The

No. 22-2469                                                                11

allegations therefore do not suggest that the suspension will make it impossible for him to become a healthcare consultant.

When we have ruled that a defendant deprived a plaintiff of occupational liberty, the deprivation has been much more certain. In *Purdue*, for example, the defendant's decision to brand the plaintiff as a sex offender resulted in his expulsion from the Naval ROTC program and foreclosed his re-enrollment in the program. Naturally, the plaintiff's chances of pursuing naval service were thwarted. *Purdue*, 928 F.3d at 662–63; *see also Mann*, 707 F.3d at 878 (plaintiff was deprived of occupational liberty because she was prohibited from operating her daycare center); *Doyle*, 305 F.3d at 617 (plaintiffs were deprived of occupational liberty because a central database, commonly relied on by employers, listed them as child abusers). Here, by contrast, the facts in the complaint do not plausibly suggest that the suspension will functionally bar Malhotra from an entire field of work.

In sum, the allegations merely speculated about the suspension's stigmatizing effect. The complaint therefore failed to plausibly allege that the defendants deprived Malhotra of the liberty guaranteed to him by the Constitution.

### III. CONCLUSION

Because Malhotra did not meet the threshold requirement of pleading a property or liberty interest, we AFFIRM the district court's judgment dismissing his complaint.

